Pleasants v. Blodgett.

GEORGE W. PLEASANTS, APPELLEE, V. HARRISON H. BLODGETT ET AL., APPELLANTS.

[FILED JULY 1, 1891.]

1. **Real Estate:** POSSESSION NOTICE TO PURCHASER. A party buying real property which is in the actual possession and occupancy of another person, is charged with notice of any right, title, or interest which such occupant has in such property.

2. **The evidence** examined, and *held*, to sustain the findings and decree of the lower court.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*H. H. Blodgett, J. C. Johnston,* and *A. E. Howard,* for appellants, cited: 1 Wharton, Ev. [3d Ed.], secs. 141, 142, and cases; 2 Id., sec. 1120 and cases; *Moore v. Livingston,* 28 Barb. [N. Y.], 543; *Edwards v. Noyes,* 65 N. Y., 125; *Metcalf v. Van Benthuysen,* 3 N. Y., 424; *Perry v. Burton,* 111 Ill., 138; Browne, Stat. of Frauds [4th Ed.], secs. 464, 465, 466; Story, Eq. Jur., sec. 761; *Wilkinson v. Scott,* 17 Mass., 249; *Sutton v. Sutton,* 13 Vt., 71; *Kelley v. Stanbery,* 13 O., 408; *Jones v. Pease,* 21 Wis., 644; *Fitzsimmons v. Allen,* 39 Ill., 440; *Baker v. Wiswell,* 17 Neb, 59; Wood, Lim., secs. 254, 267, p. 79, and cases; *Gatling v. Lane,* 17 Neb., 82; *Herdman v. Marshall,* Id., 259; *Grattan v. Wiggins,* 23 Cal., 16; *Lord v. Morris,* 18 Id., 482; *Elkinton v. Newman,* 20 Pa. St., 281; *Dawson v. Callaway,* 18 Ga., 573; *Baldwin v. Boyd,* 18 Neb., 449; *Wakefield v. Day,* 41 Minn., 344.

*Charles L. Hall,* and *Charles O. Whedon, contra,* cited: *Hathaway v. Payne,* 34 N. Y., 92; *Hoyt v. Schuyler,* 19 Neb., 657.

Совв, Сн. J.

On June 18, 1889, it was alleged, in this case, that the appellee and plaintiff below, on February 2, 1874, bought of S. M. Boyd lot 5, in block 194, in the city of Lincoln, and on the following day executed and delivered to Boyd a mortgage upon the premises to secure the payment of his note to Boyd for $25 as the unpaid remainder of the purchase money, which mortgage was filed for record in the office of the county clerk on February 14 following:

3. That on February 3, 1874, when the mortgage was executed to Boyd, he and his wife executed and delivered to the appellee a deed of general warranty for said lot, excepting taxes charged against it, which deed was not recorded, has since been lost, and cannot now be found.

4. That the appellee has paid the taxes for the year 1872, and for subsequent years to 1889, and now has the lot in possession and under cultivation.

5. That on August 6, 1875, Harrison H. Blodgett obtained from Boyd a pretended deed of quitclaim to the premises, without consideration, which conveyed no title, and which was concealed and not placed on record until August 9, 1886, when it was recorded in book 29, p. 325.

6. That on May 10, 1889, Blodgett conveyed the east half of said lot to Silas P. Ritchey and Louisa his wife, by special warranty, covenanting to defend the title only against his own acts, without consideration, recorded in book 52, p. 473.

7. That on May 10, 1889, Ritchey and his wife mortgaged said east half of said premises to said Blodgett for the full amount of the consideration of the deed from Blodgett to Ritchey, recorded in book 47, p. 532.

8. That on May 11, 1889, Blodgett in fraud of the rights of appellee, conveyed the west half of said lot 5, in block 194, to Elijah D. Ritchey, by deed of warranty against the

acts only of Blodgett, without consideration, recorded in book 53, p. 119.

9. That on May 11, 1889, Elijah D. Ritchey mortgaged said west half of said lot to Blodgett for the full amount of the consideration of his deed from Blodgett, recorded in book 48, p. 171.

10. That at the times when these pretended conveyances were made, on August 6, 1875, S. M. Boyd, and on May 10 and 11, 1889, said defendants, neither Boyd nor Blodgett nor Ritchey, Louisa or Elijah, were in possession of the premises, but this plaintiff at said times was in full, open, notorious, adverse, and undisturbed possession of all of said lot 5, block 194, and so had been in possession from February 3, 1874, to May 10, 1889, had continuously paid the taxes thereon, had put the lot into cultivation and improved the same, and now is in possession thereof.

11. That the deed from Boyd to Blodgett, and the deeds from Blodgett to Silas P. Ritchey and his wife Louisa, and to Elijah D. Ritchey, and the mortgages from the Ritcheys to Blodgett, constitute clouds upon the appellee's title, and he asks for special relief therefrom; that the title to lot 5, block 194, be quieted forever in him, and that the defendants be perpetually enjoined from interfering with his enjoyment of the possession thereof or his title thereto.

The defendants answered that on August 6, 1875, S. M. Boyd and his wife, Mary E. Boyd, conveyed to him, for a valuable consideration, the premises heretofore described, which conveyance was recorded in book N, p. 104.

2. That on May 10, 1889, Blodgett conveyed for a valuable consideration the east half of lot 5, in block 194, to Silas P. Ritchey and wife, which conveyance was recorded in book 52, p. 478, for $380, due $100 in one year, $140 in two years, and $140 in three years, and mortgage securing said notes duly recorded in book 47, p. 532.

3. That on May 11, 1889, Blodgett conveyed, for a valuable consideration, the west half of said lot 5 to Elijah

D. Ritchey, recorded in book 53, p. 119, and Ritchey in part payment mortgaged the same to secure his notes therefor, recorded in book 48, p. 177.

4. Silas Ritchey and Louisa, his wife, built a dwelling house on the east half of the lot, and have ever since lived therein; built a barn and outhouses and dug a well, set out evergreens, etc., to the value of $500, and about a month thereafter the plaintiff moved a shanty worth $10 on the alley of the lot and has since occupied the same against the defendants' wish and consent, and not until then did defendants Ritchey know that the plaintiff claimed any interest in or right to the lot.

5. On February 3, 1874, Boyd and the appellee, being penniless and insolvent, colluded and confederated to make a security for the market, and without consideration the appellee made his note for $25, secured by mortgage on lot 5, block 194, Boyd's lot, and Boyd was to pay the note due and save plaintiff harmless, and said mortgage was released at the same time it was made. Defendant denies each and every allegation not heretofore admitted.

Second—That the cause of action stated in the petition did not accrue within ten years next before the commencement of this action. The appellee replied denying each and every allegation of the answer.

There was a trial to the court, with decree for the plaintiff, on April 17, 1890, wherein it was found that the plaintiff was the owner of, and had the legal estate in, and was entitled to, the possession of the real property described; that neither the defendants, nor any of them, have any estate in or are they entitled to the possession of the real estate or any part thereof, and that the deed to said premises from S. M. Boyd to Harrison H. Blodgett, and from Harrison H. Blodgett to Silas P. Ritchey and Louisa, his wife, and from Harrison H. Blodgett to Elijah D. Ritchey, and the mortgage deeds from Silas P. Ritchey and Louisa, his wife, to Harrison H. Blodgett are each and

all of them void and of no effect in law or equity as to the title of said premises, and that each and all of them should be canceled, set aside, and held for naught, and that the title to said real estate should be quieted and set at rest in the plaintiff as against each and every one of the defendants, as prayed for in the petition.

It was ordered, adjudged, and decreed that the quitclaim deed to the real estate in controversy from S. M. Boyd to H. H. Blodgett dated August 6, 1875; that the deed of H. H. Blodgett of the east half of lot 5, in block 194, in the city of Lincoln, to Silas P. Ritchey and Louisa, his wife, dated May 10, 1889, recorded in book 52, p. 478; that the deed of the west half of lot 5 in block 194, in the city of Lincoln, to Elijah D. Ritchey, dated May 11, 1889, recorded in book 53, p. 119; that the mortgage deed for said east half of lot 5, in block 194, in the city of Lincoln, from Silas P. Ritchey and Louisa, his wife, to Harrison H. Blodgett, dated May 11, 1889, recorded in book 47, p. 532, and the mortgage deed to the west half of lot 5, in block 194, in the city of Lincoln, from Elijah D. Ritchey to H. H. Blodgett, dated May 11, 1889, recorded in book 48, p. 171, be, and the same, and each of them, hereby are, declared to be null and void, and of no force or effect in law or equity to affect the title to the real estate described. That the title and possession of George W. Pleasants to all and singular the premises, lot number 5, in block 194, in the city of Lincoln, be, and the same are, hereby quieted as against the defendants, and each of them, and all persons claiming under them, or any of them, and they are hereby forever enjoined from setting up any claim to said premises, or any part thereof, adverse to the title and possession of George W. Pleasants, his heirs or assigns, thereto, and the sheriff of Lancaster county is hereby ordered to put the said George W. Pleasants in possession of said real estate. And the said Pleasants shall recover of said Blodgett, Silas P. Ritchey and Louisa, his

wife, and of Elijah D. Ritchey, the costs of this proceeding, taxed at $66.25. To all of which findings and decree the defendants excepted upon the record and appealed their case to this court.

On the direct examination of the appellee in the court below, he testified that when he bought the lot on February 3, 1874, from Boyd, he delivered a mortgage to Boyd for the balance of the purchase money, and that Boyd had told him that he had executed and delivered a deed for him, in the hands of N. S. Scott, which he could get whenever he paid off the mortgage.

John Morrison testified that he had bought this note and mortgage from Boyd, and that Boyd had told him that he had sold this lot and had conveyed the same to Pleasants; that Boyd executed the release upon the back of the mortgage, so that when Pleasants paid the same he could see that it was released; that in 1885 Pleasants paid the note, and both note and mortgage with the endorsement of the release were delivered to Pleasants.

N. S. Scott testified that he had no positive recollection of the Boyd to Pleasants deed having been left with him, but it may have been, as some of his papers were burned in Leighton & Brown's fire.

Attention is directed to the letter of N. C. Abbott to Boyd, dated August 2, 1887, wherein it is to be inferred that, at that date, Scott had a distinct recollection that Boyd's deed to Pleasants had been made, executed, and delivered.

"*S. M. Boyd, Esq., Pittsburg, Pa.*—Sir: In the matter of deed to lot 5, in block 194, of which I wrote you last April, we have been waiting patiently for your visit to this city; but so far have seen and heard nothing of you. Mr. N. S. Scott has a very clear recollection that you executed and delivered a deed to that lot to Mr. Pleasants at the time he executed the mortgage thereon to you. Certain it is that Mr. Pleasants has paid you for the lot, and kept

the taxes paid up for more than ten years, and has the possession thereof.  It appears you subsequently gave a deed therefor to Mr. Blodgett, who certainly knew of the rights of Mr. Pleasants, for the latter was in possession.  We wish you would place this matter so that it can be fairly and squarely contested between Mr. Blodgett and Mr. Pleasants, and by giving to Mr. Pleasants a quitclaim you will have accomplished this and done yourself no harm, and compromised the rights of no one else;. but placed Mr. Pleasants in a position where he can defend his rights. You will be doing but even handed justice in complying · with our wish.  I will enclose deed, which please execute and return.

"Yours respectfully,       N. C. ABBOTT."

It appears from the evidence that the mortgage from Pleasants to Boyd was recorded February 14, 1874; the release on the back of the mortgage was executed December 29, 1874, when sold by Boyd to Morrison, and after payment by Pleasants to Morrison was recorded May 16, 1885.

As a result of the letter from Abbott to Boyd, the latter on August 27, 1887, executed a quitclaim deed of said lot to Pleasants, which was introduced on the trial as corroborative of Pleasants' testimony that he had a conveyance of the lot and was entitled to such, to which the defendant answered, "they had no objection to that."

The redemption certificate whereby Pleasants paid the taxes on the lot from 1872 to 1882 inclusive, which he. did on April 15, 1886, was put in evidence.

There is evidence that in 1886, 1887, 1888, and 1889, Pleasants had plowed the lot and raised crops upon it, when the defendant Ritchey moved upon it.

It does not appear to be doubtful that the defendant Blodgett knew of the existence of the mortgage from Pleasants to Boyd, before the date of the deed from Boyd to him. There is evidence that he had prepared an abstract of title

30

of the lot, which did not show the Pleasants mortgage, and which was exhibited to various parties and offered for sale, among whom was Ritchey.

It is testified by Anderson, that in 1888, Pleasants had a garden on the lot, and that in 1889 he had the lot plowed and cultivated in potatoes, had obtained the use of the lot from Pleasants on a debt which he owed him when Ritchey moved his house onto the lot, and that Pleasants' house was standing on the rear end of the lot when Ritchey moved upon it.

The quitclaim deed of Boyd to Pleasants was recorded August 31, 1887, and therefore Ritchey had constructive notice of Pleasants' title for nearly two years before their purchase of the lot from Blodgett.

Adverse to the title of the appellee is that claimed by the appellants. Blodgett's title by quitclaim from Boyd, dated August 6, 1875, for "lot No. 6 in block 76, and lot No. 5 in block 194," which was recorded August 9, 1886, was not produced at the trial, and grave suspicions were cast upon it. Motion to admit evidence against the deed was overruled, and exceptions taken in order to review the motion in this court. It is sufficient disposal of this motion to say that it is not deemed necessary to further consider it in order to reach a conclusion in this case.

It will be seen that the quitclaim of Boyd to Blodgett first describes the lot 6 in block 76.

N. S. Scott's affidavit shows that this deed was made to correct the title to that lot; that Boyd had owned that lot and conveyed same to one Coe, who had lost his deed which was never recorded; Coe had deeded to one Lazenby said lot 6, block 76, which deed was of record; that Lazenby, on said 6th day of August, 1875, conveyed said lot 6, block 76, to Blodgett; that Scott took the acknowledgment of that deed; that on said day Lazenby and Boyd and Blodgett and Scott were all together in the office, the three latter all occupied; that said deed of said lot 6, block 76,

made on said 6th day of August, 1875, by Boyd and wife, and acknowledged by Scott, was made by Boyd to correct the break in the chain of title occasioned by Coe losing his deed from Boyd, and that this deed was the only one made by Boyd on that date and acknowledged by Scott.

The importance of this testimony is evident. Boyd's deed of lot 6, block 76, on August 6, 1875, was made to Coe.

T. H. Hatch, an abstracter, and W. E. Churchill, deputy county clerk in 1886, both swear that the name of the grantee in the deed filed for record August 9, 1886, purporting to convey lot 6, block 76, and lot 5, block 194, from S. M. Boyd to H. H. Blodgett, had been erased and the name of H. H. Blodgett written over the erasure.

Counsel say that until the defendant Ritchey in the midst of the trial swore that he had torn up this deed, it was supposed it would be produced, and argue further that all possible diligence was used by counsel, and claims that the case ought to have been reopened and this testimony impeaching this pretended deed from Boyd to Blodgett of the lot in controversy admitted in evidence.

Blodgett does not record this deed for more than eleven years after the date it bears; knows of the giving of the mortgage by Pleasants to Boyd; knows of Pleasants paying off the mortgage and recording the release; knows of the tax sale of this lot, and permits Pleasants to redeem said lot from tax sale and pay the taxes from 1872 to 1882 inclusive; knows all these facts even before he records his deed, and officed with Boyd and knew the facts relating to the giving of the mortgage on said lot by Pleasants to Boyd, before the date of his pretended deed from Boyd of August 6, 1887.

Some of the testimony of Blodgett, showing his knowledge of Pleasants' title, and his efforts to sell the lot without the buyer getting knowledge of same, is herewith given.

Q. Did you and Boyd and Captain Scott office together?

A. Yes.

Q. There was no mortgage at that time on record?

A. I know of no mortgage on record.

Q. Did you not apply to Captain Zernecke to make the abstract and leave the mortgage off?

A. I might, I don't remember.

Q. Is it not your best impression you did?

A. Maybe I did.

Q. Why did you do that?

A. Because I did not consider it a lien on the property.

Q. You showed that abstract to Ritchey?

A. Yes, sir.

Q. You left this off?

A. Yes, I left this off.

Q. You finally left this mortgage off?

A. Yes, sir.

Q. You showed this to Ritchey?

A. Yes, sir.

Q. And told him this was a correct abstract of the title?

A. I told him it was an abstract of title.

Q. You led him to believe that abstract contained everything on the record?

A. I led him to believe the title was good.

Q. Answer the question—When you showed it to him did not you lead him to believe that it was a correct abstract of title, of everything?

A. I did.

Q. And at the same time this mortgage of George Pleasants you left off.

A. Yes, sir.

Q. And you showed him this abstract?

A. Yes.

Q. This fraudulent abstract you got up, you showed him that?

A. Yes, I showed him that.

Q. Before you got this deed from Boyd did you look at the record?

A. I think I did.

Q. And this mortgage was on the record?

A. On the record.

Q. I will ask you if you paid taxes?

A. I have not paid any taxes.

Q. You known that Mr. Pleasants paid taxes on this lot from 1872 down?

A. I know the record shows it was sold for taxes, and Mr. Pleasants went in and paid the taxes to the county.

Under the evidence adduced, the court below found that the appellant Blodgett was in the possession of facts sufficient to put him upon an examination of the appellee's title; that the appellant Ritchey had equal opportunity of learning of the appellee's claim of title, and that none were innocent purchasers, in a sufficient sense, adverse to the title of the appellee. The testimony is conflicting, to the extent of the astuteness and ingenuity of the resisting defendants, but the one salient fact remains that a deed had been made for the lot to the appellee, who had executed a mortgage for the purchase money, and had subsequently satisfied the mortgage and was entitled to the deed. It may have been delivered, according to the testimony, to one of two or three parties for the grantee, but it is fairly established, as found by the court below, that it was made and delivered by Boyd for Pleasants, conveying to him the title in fee.

Whether a deed, under these facts, executed and not delivered immediately, but handed to a stranger to be delivered at a future time, be an *escrow* or a deed of the grantor *presently*, depends upon the intent of the parties. Where the future delivery depends upon the performance of a condition it is an escrow. (*Hathaway v. Payne*, 34 N. Y., 92.) And this appears to be the present case.

In *Hoyt v. Schuyler*, 19 Neb., 657, it was said that "the

very form of conveyance by quitclaim, repels the inference of a *bona fide* purchase." The purchaser bought an interest which had previously been conveyed to another, and the grantee under the quitclaim thereby took nothing.

A rule of long standing is, that this court will not reverse a case where the evidence is conflicting unless the judgment is clearly against the weight of evidence. We are of the opinion that the judgment is fairly supported by the evidence and it is therefore

AFFIRMED.

THE other judges concur.