### BELL et al. v. ARLEDGE et al.

### In re LONG LEAF LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. December 16, 1914.)

No. 2653.

1. BANKRUPTCY ☞348—LABOR CLAIMS—RIGHT TO LIEN—SUBROGATION.
     Where claimants, a mercantile firm, furnished supplies to a lumber company's employés, taking time checks therefor, passing by delivery without any assignment of the laborers' claims and relying entirely on the lumber company's credit to redeem the checks, there was no subrogation to the rights of the employés so as to entitle claimants to a lien on the lumber company's assets in bankruptcy.
     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ☞348.]

2. APPEAL AND ERROR ☞1099—DECISION ON FORMER APPEAL—RES JUDICATA.
     A decision on a former appeal to which claimants were parties that they were not entitled to subrogation to the liens of certain laborers by a transfer of time checks in consideration for supplies was res judicata, and ended the litigation so far as claimants' right to a lien was concerned.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370-4379; Dec. Dig. ☞1099.]

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

In the matter of bankruptcy proceedings of the Long Leaf Lumber Company, bankrupt. From a decree awarding to claimants Holland & Weisinger a lien on certain labor claims over objections of E. C. Arledge, trustee in bankruptcy, William A. Bell and others appeal. Reversed and remanded, with instructions to dismiss claimants' demand for lien.

N. C. Abbott, of Houston, Tex., for appellants.
W. L. Hill, of Huntsville, Tex., for appellees.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

PARDEE, Circuit Judge. This is the second appeal in the above entitled cause contesting the claims of Holland & Weisinger, lienholders upon the estate of the bankrupt. On the first appeal this court, after reciting the facts and evidence, held and decided as follows:

"From the above and foregoing, it is apparent that Holland and Weisinger, in all matters involved in their account herein, whether in selling goods and merchandise, taking up scrip, paying checks, or accepting orders, were acting under their agreement with the Long Leaf Lumber Company, and for payment were relying upon the credit of that company, and that the claim of a lien under assignment from laborers was an afterthought. Certain it is that the evidence does not show any assignment of any laborers' claim or lien.

"Under the facts in this case, an assignment (to carry a lien) of scrip or duebills, passing by delivery and payable to bearer on or before 10 years, cannot well be presumed, and an assignment of laborers' claims, where neither the laborer nor the specific labor is proved, should not be presumed.

"The statute article 3339d, Texas Civil Statutes, subrogates assignees, but not every person who may come in possession of the claim. See Union Trust Co. v. Southern Sawmill, etc., 166 Fed. 193–202, 92 C. C. A. 101, and cases there cited.

"On the whole case, we conclude that the judgment appealed from should be affirmed as to appellees Watts and Stone, and reversed as to Holland & Weisinger; costs of this court to be divided, one-half to appellants and one-half to Holland & Weisinger. No docket fees. And it is so ordered." 192 Fed. 842, 843, 113 C. C. A. 161.

Two years after this decision and mandate duly entered in the lower court, Holland & Weisinger, assuming that the case was open for further contest as to their claimed lien, and apparently without leave, filed what was entitled "Plaintiffs' Amended Bill," generally and in detail setting forth their claims, and concluding with a prayer as follows:

"Premises considered, petitioners pray that upon a hearing hereof they have judgment against the said bankrupt, the Long Leaf Lumber Company, for the amount of their claim, with legal interest thereon from the date thereof, and that the same be declared to be secured by a valid lien upon the assets of the said Long Leaf Lumber Company, formerly in the hands of the referee in bankruptcy in this cause, and that they have judgment against the said W. A. Bell and L. B. Menefee for the amount of said account, interest, and costs of suit."

Without any answer to the same so far as the record shows, Holland was again examined as a witness, and on the material issue of assignment vel non he testified as follows:

"Q. In your petition filed in this case about a year ago, after the original claims were filed, the petition contained this allegation: 'That your petitioner entered into a contract and agreement with the bankrupt whereby it was arranged between the petitioner and the bankrupt that the management of said mill should issue checks, duebills, and statements of indebtedness due by said Long Leaf Lumber Company to said laborers, and that your petitioner would take up or cash said checks, duebills, or orders, and should be reimbursed by the said Long Leaf Lumber Company for the amount so paid.' That is a true statement, is it not, Mr. Holland? A. Yes, sir. Q. That is the exact situation as it existed at that time between you and the

company? A. Yes, sir. Q. You had no contract with the laborers at all? A. I had no contract with the laborers. Q. You had no contract with any of the laborers individually? A. We had a contract to furnish them goods for these checks, but you might say I did not have any special one, it was the laborers in general. Q. Is there any laborer that you had a contract with with reference to furnishing the money on these checks? A. No, sir; we had no contract with individuals. Q. Your contract was wholly between you and the Long Leaf Lumber Company? A. Between Holland & Weisinger and the president and Mr. Stone. Q. Mr. Stone was simply representing the Long Leaf Lumber Company? A. Yes, sir; as manager. Q. Now I will read you a part of the testimony given by Mr. Stone, as shown in the opinion of the Circuit Court of Appeals: 'The Long Leaf Lumber Company had an agreement with Holland & Weisinger to cash or pay off all these mill checks, duebills, and orders with the understanding that at stated times the Long Leaf Lumber Company would pay the said Holland & Weisinger the amount due them for such items, and from time to time Holland & Weisinger rendered statements of the amount so due them and surrendered the mill checks, duebills, and orders, and were paid in accordance with said agreement.' That was a truthful statement of the situation, was it not? A. Yes, sir. Q. Reading further from his testimony as given in the opinion of the court: 'At the time of the closing of the business of the Long Leaf Lumber Company it was indebted to the said Holland & Weisinger for mill checks, duebills, and orders held by them in the amount of $1,341.59.' That was correct? A. Yes, sir."

## Re-examined by Mr. Hill:

"We bought these mill checks from the laborers; they were under no obligation to deliver them to us any more than to any other person; they could have retained them and had them paid by the Long Leaf Lumber Company, in fact a great number of the laborers did that very thing. In order to get these duebills or mill checks we had to buy it or pay him for it. We bought them in every instance represented in this account, and other people bought them the same as we did. We bought these duebills or mill checks as a result of an agreement between ourselves and the laborers that held it that we would take it and pay the money or give him goods for it, and he would surrender it to us. They were not orders issued by Holland & Weisinger. The check reads as follows: 'There is due......dollars for labor.' In the duebills the names of the laborers were given, but the names were not on the checks. If I got a duebill it would just be, say, for instance, Bill Johnson has $10 worth of time due him by the Long Leaf Lumber Company. The mill check is an ordinary check or round piece of paper, and printed on them would be 'good for 5c,' or '10c,' or '25c,' as the case may be.

"The duebill is a written statement in substance to the effect: 'There is due......dollars for labor.' We had a bunch of these mill checks at the trial before, and they were offered in evidence. I do not know where they now are. We made the agreement because we could buy the checks and buy them in a way that we could afford to pay the Long Leaf Lumber Company; we got the checks at a discount. It was the agreement that on paying them every 30 days we were to give them the discount. There was no agreement with the Long Leaf Lumber Company that we were to look alone to them for payment. The contract between us and Judge Ford, the president of the company, expressly stated that we would have a laborer's lien to secure these checks, and we bought the checks and duebills with that understanding and agreement."

## Cross-examined by Mr. Abbott:

"Q. Did you have any agreement with any of these laborers that they would be responsible for the amount due on these checks, provided the Long Leaf Lumber Company did not pay them? A. I had no agreement with them. Q. You kept no account of the laborers from whom you bought the checks? A. Some of them are here. I think you will see in the account where the

name shows from whom we bought the checks; some of them don't; we did not keep all the names. Q. Speaking generally, you can name the people from whom you bought these checks? A. I could name some of them. Q. Just from memory? A. Yes, sir."

Redirect, examined by Mr. Hill:

"My recollections are that on the former trial we had mill checks amounting to $205.55, and the balance represented by duebills. The duebills show each laborer to whom it was issued, the mill checks do not."

Thereafter the case was again submitted to the court presumably on all the evidence, and judgment was rendered in favor of Holland & Weisinger as follows:

"On this 28th day of February, 1914, there came on to be heard the matter of the claim of Holland & Weisinger, and the court, having heard the evidence and argument of the counsel, is of the opinion that the petitioners Holland & Weisinger should recover of and from W. A. Bell and L. B. Menefee the amount of their proven claim of $1,342.59, less the sum of $205.55, to wit, the sum of $1,137.04; and it is therefore ordered, adjudged, and decreed by the court that the petitioners Holland & Weisinger do have and recover of and from W. A. Bell and L. B. Menefee the said sum of $1,137.04, with interest thereon at the rate of 6 per cent. per annum from the 3d day of March, 1908, and all costs in this behalf expended, for which let execution issue, to which finding and judgment W. A. Bell and L. B. Menefee except and in open court give notice of appeal to the United States Circuit Court of Appeals for the Fifth Circuit, and 60 days from this date is given them to prepare and submit bills of exception, statement of facts, and record for appeal."

From this judgment this appeal is prosecuted.

[1] Assuming that under our former decision, adverse to the lien claimed by Holland & Weisinger, the case after mandate received and entered upon was open for addition and amendment of the pleadings and a new trial of the issue, we find that on such amendment as was made and such additional evidence taken the case stands no better for the allowance of the lien claimed; because the evidence still shows that neither by contract, transfer, assignment, nor subrogation is the lien claimed sufficiently proved.

[2] However this may be, our former decision was res adjudicata, and, so far as the claims of Holland & Weisinger for a lien on the property of the bankrupt was concerned, ended the litigation, and in the lower court there was nothing left to do in proceeding thereafter in accordance with the views expressed in our opinion than to dismiss the claim with costs. See Durant v. Essex Co., 101 U. S. 555, 25 L. Ed. 961; Kingsbury v. Buckner, 134 U. S. 671, 10 Sup. Ct. 638, 33 L. Ed. 1047; Tyler v. Magwire, 84 U. S. (17 Wall.) 283;[1] Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. 611, 37 L. Ed. 432; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414.

In Gaines v. Rugg, just cited (148 U. S. 228, 13 Sup. Ct. 611, 37 L. Ed. 432), which as to reversal and mandate and after proceedings was very similar to the case in hand, it is said:

"It is contended for the respondent that the decree of this court was one absolutely reversing the decree of the Circuit Court; that the Circuit Court had a right, therefore, to proceed in the case, in the language of the mandate, not merely 'in conformity with the opinion and decree of this court,' but also 'according to right and justice,' and that therefore it had authority to permit

[1] 21 L. Ed. 576.

the defendant Rugg to take further testimony in support of his exceptions, 'by way of defense to the title to the lands in controversy,' and to set down the cause 'upon the issues formed by the pleadings and exceptions aforesaid as to the title to said lands'; in other words, that the whole controversy was to be reopened as if it had never been passed upon by this court as to the title and possession of the land. This cannot be allowed, and it is not in accordance with the opinion and mandate of this court."

See pages 239, 240 of 148 U. S., page 615 of 13 Sup. Ct. [37 L. Ed. 432].

The decree appealed from is reversed, and the cause is remanded, with instructions to dismiss the claim and demand of Holland & Weisinger for a lien on the property of the Long Leaf Lumber Company and as against appellants herein, with costs.