## In re McGOWIN LUMBER CO.

### (District Court, S. D. Alabama. April 1, 1915.)

### No. 1436.

BANKRUPTCY ☞348—DEBTS ENTITLED TO PRIORITY—HOLDERS OF LABORERS' TIME CHECKS.

By an arrangement between bankrupt, a lumber company, and claimants, a mercantile firm, bankrupt issued time checks to its laborers, not dated nor negotiable, but which were accepted by claimants in payment for goods, and at the end of each month were to be taken up and paid by bankrupt, less a 10 per cent. commission agreed upon. Such checks were not assigned, nor was there any agreement whatever between claimants and the laborers from whom they were received. *Held*, that claimants relied upon bankrupt's credit, and that there was no subrogation to the right of the laborers to a preference under Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 (Comp. St. 1913, § 9648), especially as, if such preference were allowed, the estate would be insufficient to pay other preferred claims in full. *Held*, further, that the evidence was insufficient to establish the fact that the checks presented were for labor done within the three months prior to the bankruptcy necessary in any case to entitle them to a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ☞348.]

In Bankruptcy. In the matter of the McGowin Lumber Company, bankrupt. On review of order of referee allowing claim of J. C. Stewart & Co. as entitled to priority. Reversed.

Gregory L. & H. T. Smith, of Mobile, Ala., for claimants.
Stevens, McCorvey & McLeod, of Mobile, Ala., for trustee.

TOULMIN, District Judge. The claim of J. C. Stewart & Co., filed against the bankrupt estate, is on labor checks issued by the bankrupt to its workmen. J. C. Stewart & Co. got possession of these checks when the workmen came to their store to trade for merchandise, and would give to Stewart & Co. the checks in exchange for and in payment of the merchandise received by the workmen. The checks were counted each day by the said company and carried to the bankrupt and left there because it had a good safe to keep them in. The bankrupt issued a time check every day to its laborers. They could either trade in the entire check and turn it in, or could trade a part of it and turn in the rest to the bankrupt. Sometimes the laborer would trade in a smaller amount than his check called for, and the merchant took off a coupon for the amount traded. Stewart & Co. kept a list of the

checks daily that were traded in to them. After they had been paid, they were destroyed. If the amount traded in for merchandise purchased was less than the amount of the check used in the purchase, a coupon for the proper amount was torn off the check. No memorandum was made on the check or coupon to show who traded it. Frequently a man would bring in a check which was not issued to him. J. C. Stewart, Jr., who it appeared from the evidence knew more tbout the course of business between J. C. Stewart & Co. and McGowin Lumber Company than any other witness, testified that their books showed how they charged up the McGowin Lumber Company money. It appeared that they kept a "kitchen account" separate from what the witness called the McGowin Lumber Company money. He further testified that the entries on the books of the McGowin Lumber Company, showing a credit to J. C. Stewart & Co. of $6,183.91 is not their whole claim against them, but is their whole claim for labor within three months from the bankruptcy proceedings. The sample check attached to the opinion of the referee does not correspond with the checks presented by the claimant, which checks were in evidence as the basis of his claim for priority of payment, and presumed to have been filed in support of such claim. Said sample has the word "date" on it. On the checks and coupons filed as evidence even the word "date" is not found. The checks filed do not show any date on which they were issued, and the coupons in evidence are without date and without names of the persons to whom issued. There is a large number of these coupons detached from checks. If the claimant cannot show to whom and on what date they were issued, and from whom he received them, how can he establish the fact that they were given to a laborer for work done within three months from the bankruptcy proceedings?

The bankruptcy proceedings were begun on September 28, 1914. Three months prior to that date was June 28th. As the date of the issue of the labor checks and coupons turned in to Stewart & Co. are not shown by said checks and coupons, it is not clear from the evidence how J. C. Stewart & Co. know or could know that said checks and coupons were for labor within the three-month period named. The evidence further was that when the laborers came in the store of said J. C. Stewart & Co. and traded their checks, there was no conversation with them about an assignment of any claim they had against McGowin Lumber Company, or anything like it. The party with the check handed it in, and if the amount traded for took up the full amount of the check it was retained by the merchant, and, if less, coupons were torn off and the balance of the check returned to the laborer. Nothing was said about an assignment. J. C. Stewart, Jr., testified that they took in the checks in the month in which they were earned, yet he stated that it was frequently the case that the checks earned during one month were given to Stewart & Co. the next month. Said witness further stated that "the way that he could tell whether a check was issued one month or another month is that the checks are supposed to be dated." It is true that the sample check attached to the referee's opinion had the word "date" on it, but no date affixed.

Moreover, it appears that the checks and coupons filed in evidence before the court are without date. The witness was doubtless correct in saying that they were supposed to be dated, while the fact is those submitted in evidence as a basis for the claimant's claim for priority of payment of the sum due on said checks and coupons were not dated. They, therefore, could not have served the purpose of informing the witness in what month the checks were issued.

The witness also said that "these new tickets have been used since about April 1, 1914," and that (he) "I don't think that there are any of those checks or coupons that came in for months prior to June." If they were issued for labor or work done prior to June 28th, they would not be a basis for the claim of priority of payment, being without the three-month period, from the bankruptcy proceedings, September 28th.

J. C. Stewart, a member of the firm of J. C. Stewart & Co., testified that he arranged with McGowin Lumber Company for the handling of these labor checks; that the agreement was that said Lumber Company would issue labor checks, for which Stewart & Co. would let the men have merchandise from his store, they giving Stewart & Co. the checks in payment for the merchandise traded for. And Stewart & Co. agreed to give the McGowin Lumber Company 10 per cent. discount on all checks which Stewart & Co. took in. McGowin Lumber Company, in settling with Stewart & Co. for the amount due the latter on said checks, deducted therefrom the 10 per cent., according to their agreement. J. C. Stewart further stated that McGowin Lumber Company kept books at its office, and that he would go there when he wished to see how the account stood. He also stated the only agreement he had about the checks was the one with McGowin Lumber Company, and in that agreement the labor checks were to be counted at the end of each month taken up and account turned in, and on the first Saturday after the fifteenth of the next month Stewart & Co. were to be paid. His evidence also was that they had no agreement with the laborers relative to the checks.

The evidence is that the total labor claims against the bankrupt are something over $12,000 and that the assets of the bankrupt estate will not be sufficient to pay the labor claims in full, after paying the expenses of administration, if the claim of J. C. Stewart & Co. is allowed as a claim entitled to priority. The material and important facts in this case are as above stated.

The question presented by the record before the court is whether the claim of J. C. Stewart & Co. is one entitled to priority of payment on the facts shown by the evidence.

I cannot concur with the referee in all of his findings of the facts, and am constrained to differ with him in his views and conclusions as expressed by him in his opinion and decree in this case.

There is no question that, under the agreement between the bankrupt and J. C. Stewart & Co. the checks issued by the bankrupt to its laborers could be transferred in trade by delivery to said J. C. Stewart & Co. in payment or exchange for merchandise. Said checks were not negotiable, and were in terms not transferable, except in trade.

The purpose of said agreement manifestly was to enable Stewart & Co. to get the trade of said laborers, or at least promote their chances to get such trade, and receive the profit accruing therefrom, and at the same time to benefit McGowin Lumber Company by the allowance of 10 per cent. discount in the aggregate amount due on the checks taken in by Stewart & Co., which amount, less 10 per cent., was to be paid Stewart & Co. by McGowin Lumber Company for the checks. By this agreement said lumber company was enabled to get its labor at 10 per cent. less cost than paying for it in money direct to the laborers.

From the evidence in the case, I find the facts to be that said labor checks were not purchased by said Stewart & Co. from the laborers from whom they were obtained, and that said checks were not assigned to Stewart & Co. by said laborers. Moreover, it appears from the agreement between the bankrupt and the claimant, and by their course of dealing under the agreement, that the claimant was relying on the bankrupt's credit for payment of the checks.

I am further of opinion that the evidence is insufficient to establish the fact that the checks in evidence were all earned for labor done within three months from the bankruptcy proceedings—an essential fact to be established to entitle claimant to a priority of payment, even if otherwise so entitled.

My opinion, therefore, is that the claim of J. C. Stewart & Co. is not entitled to priority of payment.

In Re Erie Rolling Mills Co. (D. C.) 1 Fed. 585, the company had issued orders to its employés for wages, in form following:

"No. 573.                                      Erie, Pa., Oct. 12, 1875.
"Pay to Mr. J. Heffner, or bearer, five dollars in goods and charge to
"$5.00.                                        Erie Rolling Company."

These orders had been taken by merchants from such laborers, and preference was claimed, but it was held that they were not entitled thereto.

In Browder & Co. v. Hill, 136 Fed. 821, 69 C. C. A. 499 (Sixth Circuit), the court held:

"A bankrupt corporation gave to its employés orders on claimants for goods, and charged the same against the current wages of the men. Claimants filed such orders, and charged the amount to the corporation, which paid the same from time to time, either in cash, or by note or credits on its books. Under the statute [of Tennessee] the employés were entitled to laborers' liens on the property of the corporation for wages earned within three months prior to the bankruptcy. Held, that no right of subrogation to such liens arose in favor of claimants from such transactions, nor to the priority given labor claims by the bankruptcy act, and that such subrogation would not be accorded them where it appeared that, if it were, the estate would not be sufficient to pay the preferred claims in full."

Where at the time of bankrupt's adjudication, claimants, under an agreement with the bankrupt, furnished merchandise to its laborers upon presentation of orders or time checks issued by the bankrupt for work done, evidence examined, and held that claimants were relying on bankrupt's credit for payment, and were not entitled to a lien under an assignment of laborers' claims. Digest A. B. R., vol. 3, p. 533;

Bell v. Arledge (C. C. A. 5th Cir.) 192 Fed. 837, 113 C. C. A. 161. In the opinion of the court Judge Pardee said:

"The evidence does not show any assignment of any laborer's claim or lien. Under the facts in this case, an assignment [to carry a lien] of script or duebills, passing by delivery and payable to bearer, * * * cannot well be presumed, and an assignment of laborers' claims, where neither the laborer nor the specific labor is proved, should not be presumed."

"Where claimants, a mercantile firm, furnished supplies to a lumber company's employés, taking time checks therefor, passing by delivery without any assignment of the laborers' claims and relying entirely on the lumber company's credit to redeem the checks, there was no subrogation to the rights of the employés so as to entitle the claimants to a lien on the lumber company's assets in bankruptcy." In re Long Leaf Lumber Co., 219 Fed. 675, 135 C. C. A. 347.

The referee in his opinion cited the case of Shropshire Woodliff & Co. v. Bush, 204 U. S. 186, 27 Sup. Ct. 178, 51 L. Ed. 436, to sustain his finding that the claimant in this case is entitled to priority of payment on the checks held by him. The case cited is not, in my opinion, applicable to the case here. The opinion of the Supreme Court was given as an answer to a question by a Circuit Court of Appeals certified for instructions. The question was:

"Is an assignee of a claim for wages earned within three months before the commencement of proceedings in bankruptcy against a bankrupt debtor entitled to priority of payment under section 64 (4) of the Bankruptcy Act, when the assignment occurred prior to the commencement of such bankruptcy proceedings?"

In the case cited there was an assignment of a claim for wages. The character of the claim, other than it was for wages, was not stated. It may have been a negotiable promissory note. It might have been a labor ticket or check which issued without any restrictions on its transferability. It may have been by its terms made negotiable or transferable, and it may have been purchased by the assignee from the original holder of the claim, and, as said by the judge in the case cited, "the right of prior payment of the wage-earner" was "attached to the claim of the wage-earner and passed with the transfer to the assignee." In my view of the instant case and its facts, the case cited is not applicable to it, in the absence of facts showing its applicability.

An assignable check may be assigned before proceedings in bankruptcy, and it may be proved by the assignee upon proper showing by the owner. But the proof of the claim which has been assigned should set forth the date and facts of transfer and the name of the original creditor. Collier on Bankruptcy (10th Ed.) page 717.

A priority debt should not be ordered paid until it appears that there will be enough assets to pay in full all like debts of the same and higher classes. Collier on Bankruptcy (10th Ed.) 889.

"The findings of a referee in bankruptcy are not conclusive, and will be set aside where the court is of opinion they are manifestly erroneous." In re Miner, 9 Am. Bankr. Rep. p. 100, 117 Fed. 953; In re Elmore Cotton Mills (D. C.) 217 Fed. 819.

The order of the referee is reversed and set aside. And it is so ordered.