## McDONALD v. BELDING.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 379. Submitted April 26, 1892. — Decided May 16, 1892.

In Arkansas, although the rule obtains that a person holding under a quit-claim deed may be ordinarily presumed to have had knowledge of imperfections in the vendor's title, yet that rule is not universal, and one may become entitled to protection as a *bona fide* purchaser for value, although holding under a deed of that kind; and in this case it is held that the plaintiff in error, although taking a quitclaim deed, was not chargeable with notice of any existing claim to the property upon the part of either of the defendants in error.

In Arkansas, when the payment of the consideration and the acceptance of a deed by the purchaser occur at different times, the denial of notice of fraud, in order to support a claim to protection as a *bona fide* purchaser, must relate both to the time when the deed is delivered, and to that when the consideration was paid; but, where it appears upon the face of the answer, that the purchase for a certain price and the delivery of the deed were made at the same time, and were parts of one transaction, the denial of notice until the defendant had made the purchase is equivalent to a denial of notice at the delivery of the deed.

*Rector v. Gibbon*, 111 U. S. 276, distinguished from this case.

THE court stated the case as follows:

The appellees Belding and wife, being in possession of a tract of land within the Hot Springs Reservation, now known as lot nine, block sixty-eight, in the City of Hot Springs, Arkansas, leased the same, April 24, 1874, to Frank Flynn for the term of five years at an annual rent of two hundred dollars; the rent to cease whenever the lessors were unable to protect him in the possession and enjoyment of the lot; and the lessee to have the right, at any time within thirty days after the expiration of the term, to remove all buildings and improvements put upon the land, first paying any rent in arrear.

The lessee covenanted for himself and legal representatives to waive all benefit that might accrue to him or them in the

way of title to the demised premises by virtue of occupancy or settlement, and to hold the same only as the tenant or tenants of the lessors, and fully subject to the covenants contained in the lease.

Flynn presented his petition to the Hot Springs Commission organized under the act of Congress of March 3, 1877, 19 Stat. 377, c. 108, claiming to be entitled, by right of occupancy and improvements made before April 24, 1876, to purchase the above lot. The petition referred to Belding as claiming the land prior to his occupancy, and stated that he, Flynn, had not "recognized Belding as landlord since the Supreme Court of the United States decided the title to be in the United States." The plaintiffs, also, presented their petition to the commission and claimed the right to purchase this lot from the government.

The commission adjudged, December 8, 1877, that Flynn was entitled to purchase the lot; and, subsequently, May 21, 1881, the United States issued a patent to him, based upon the judgment rendered by the commission.

By deed of July 21, 1884, Flynn (his wife uniting with him) made a quitclaim deed of the premises to the appellant McDonald, the recited consideration being $8500 cash in hand paid to the grantors. This deed was duly acknowledged by Flynn August 2, 1884, and by Mrs. Flynn July 28, 1884, and was filed for record in the proper office August 2, 1884.

The present suit was brought by Belding and wife, December 19, 1884, more than seven years after the adjudication by the Hot Springs Commission in favor of Flynn, and more than three years after Flynn received the patent from the United States. It proceeds upon the ground that the commission committed an error of law in awarding the right to purchase this lot to Flynn rather than to them. The bill charged that Flynn "has recently executed to the defendant Michael McDonald, without consideration, and for the purpose of defrauding plaintiffs, a fraudulent deed of conveyance purporting to convey said lot to him for eight thousand five hundred dollars, when, in fact, nothing was paid by him for it; that defendant knew at the time of the making of said deed, and of the said

pretended purchase of the tenancy of the said Flynn as aforesaid, and of the rights of the plaintiffs."

The relief asked was an accounting with reference to rents, and a decree adjudging the deed to McDonald to be fraudulent and void, and declaring the lot to be held in trust for plaintiffs, or for plaintiff George Belding.

Flynn, in his answer, met all the material allegations of the bill. He alleged that the plaintiffs never sought to disturb the award of the commission until the bringing of this suit, " up to which time plaintiffs, and especially plaintiff George Belding had asserted and insisted that the said award and all other awards of the commission were right and ought not to be disturbed; that on the 21st day of July, 1884, this defendant, believing he had a clear title to said lot, sold it to the defendant McDonald as aforesaid, and executed to him a quitclaim deed therefor."

McDonald, in his answer, said : " He knows nothing of the lease alleged to have been executed between plaintiffs and his co-defendant Frank Flynn, nor of the alleged relation of landlord and tenant between them, nor of the alleged proceedings before said commissioners, but that if said relation ever did exist it was dissolved in June, 1876, by the United States, through their receiver taking possession of said land under paramount title; that defendant Flynn had then valuable improvements upon said lot, which he could not lawfully remove, and to avoid losing them filed a petition before said commissioners setting forth that fact and praying them to award the preference right to purchase it from the United States; that he supported said petition by evidence, and that said commissioners awarded said right to him, and that he afterwards purchased said lot from the United States, and on the 21st day of May, 1881, obtained a patent for it, a copy of which is annexed hereto and made part of this answer as Exhibit A; that on the 21st day of July, 1884, this defendant, finding the title to said lot to be in said defendant Flynn and knowing nothing whatever of plaintiff's alleged claim to it, bought it from him for the sum of eighty-five hundred dollars ($8500) in cash, and obtained from him a quitclaim deed thereto; that he

never heard of any claim of plaintiffs until he made said purchase and paid said money; that plaintiffs never until since said purchase sued for said lot or put any claim of record; that said deed and sale to this defendant were not made without consideration nor to defraud plaintiffs, but are made in good faith." The defendant annexed to and made part of his answer a copy of the deed to him from Flynn.

By an interlocutory decree it was declared that the Commission by error and mistake of law, awarded to Flynn the right to purchase the lot in question, and that the title, interest, and estate of the several defendants should be transferred to and vested in the plaintiffs. The cause was thereupon referred to a special master for report as to rents, taxes and improvements. By the final decree the relief asked by the bill was given.

*Mr. John McClure* for appellant.

*Mr. R. G. Davies, Mr. U. M. Rose* and *Mr. G. B. Rose* for appellees.

The answer of McDonald is not sufficient to support the defence of innocent purchaser. It denies notice of the claim of the plaintiff until after payment of the purchase-money, but does not deny notice until after the making of the deed to defendant. This defect is necessarily fatal. *Byers* v. *McDonald*, 12 Arkansas, 218, 286; *Miller* v. *Fraley*, 21 Arkansas, 22.

The case of *Miller* v. *Fraley*, 23 Arkansas, 738, is not against us. The deed in that case was not a quitclaim deed. The court said: " The deed in question is in the usual form of an absolute conveyance in fee, *with a special warranty against any claim made or suffered by the vendor.*"

If such a warranty had been made in this case, of course it would have been broken. The question as to a quitclaim deed did not arise in that case and was not passed upon. The exact point was raised in *Gaines* v. *Summers*, 50 Arkansas, 322, and was then decided as it has been decided by this

court. In speaking of a quitclaim deed in that case, the court said : " It was at least sufficient to have put appellants on inquiry, which, if they had prosecuted with ordinary diligence, would, doubtless, have led to actual notice of the facts as shown by the evidence in this case ; but they prosecuted no inquiry, and it follows that they are not *bona fide* purchasers without notice." This covers the whole ground. The rent of the house on the ground was not the sole criterion of the value of the rents.

We submit that the evidence fully sustains the finding of the master and the decree of the court below.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

According to the evidence in the cause, McDonald paid in cash the full consideration recited in the deed from Flynn, without actual notice of any claim to the property by the plaintiffs, or either of them. Did he have such constructive notice of the plaintiff's claim as deprived him of the right to be regarded as a *bona fide* purchaser for value ? It is said that in Arkansas no one can be deemed an innocent purchaser if he holds under a quitclaim deed. In that State, "a quitclaim deed is a substantive mode of conveyance, and is as effectual to convey all the right, title, interest, claim and estate of the grantor as a deed with full covenants, although the grantee has no possession of or prior interest in the land," and it is not necessary that a vendee hold " under a deed with general covenants of warranty to entitle him to protection as an innocent purchaser ; " although, where " a person bargains for and takes a mere quitclaim deed, or deed without warranty, it is a circumstance, if unexplained, to show that he had notice of imperfections in the vendor's title, and only purchased such interest as the vendor might have in the property." *Bagley* v. *Fletcher*, 44 Arkansas, 153, 160; *Miller* v. *Fraley*, 23 Arkansas, 735, 740.

In *Gaines* v. *Summers*, 50 Arkansas, 322, 327, 328, the court, after referring to the fact that a deed recited a consid-

eration of only five dollars for real estate which had cost six thousand dollars, said: "Add to this fact that the conveyance executed was a quitclaim deed, and the conclusion that Mrs. Saunders did not acquire a good and valid title, in the absence of an explanation, would be irresistible. It was, at least, sufficient to have put appellants on inquiry, which, if they had prosecuted with ordinary diligence, would, doubtless, have led to actual notice of the facts as shown by the evidence in this case. But they prosecuted no inquiry; and it follows that they are not *bona fide* purchasers without notice." In the same case it was said that a person purchasing an interest in lands "takes with constructive notice of whatever appears in the conveyances constituting his chain of title;" and that if anything appeared in such conveyances, sufficient to put a prudent man upon inquiry, it was his duty to make the inquiry, and he would be charged by the law with the actual notice he would have received if he had made it. These cases fall far short of sustaining the broad contention of the plaintiffs in respect to quitclaim deeds. On the contrary, they show that, in Arkansas, one *may* become entitled to protection as a *bona fide* purchaser for value, although holding under a deed of that kind. Applying the principles of those cases to the present case, we are of opinion that McDonald is entitled to protection as an innocent purchaser. The deed that he accepted was not drawn as a quitclaim deed pursuant to any specific direction given by him. So far as the evidence discloses, the amount paid by him was the full value of the property. If he had, before purchasing, instituted an inquiry as to the title, so far as it was shown by the record of deeds, he would not have found any title of record in the plaintiffs. But he would have found that Flynn held under a patent from the United States based upon a claim established in favor of the patentee, under the acts of Congress relating to the Hot Springs reservation. It is true that if he had caused the proceedings of the Hot Springs Commission to be examined he would have seen that Belding contested, with Flynn, before that tribunal, the right to purchase the lot here in dispute. But he would, also, have learned that Flynn's right was recog-

nized by the Commission, and, from the records of the courts, state and Federal, he would have learned that more than seven years had then elapsed without legal proceedings, upon the part of the plaintiffs, questioning the correctness or validity of the judgment by that tribunal in favor of Flynn. He might well have supposed that Belding had acquiesced in that judgment. Under all the circumstances, it cannot be held that McDonald, although taking a quitclaim deed, was chargeable, when he purchased, with notice of any existing claim to the property upon the part of the plaintiffs, or of either of them.

It is contended that the answer of McDonald does not support the defence of being an innocent purchaser, in that, while denying notice of the plaintiff's claim at the time of the payment of the purchase money, it did not deny that he had such notice at the time of the delivery of the deed to him. This position is supposed to be sustained by *Byers* v. *McDonald*, 12 Arkansas, 218, 286, and *Miller* v. *Fraley*, 21 Arkansas, 22. In the first of those cases, the court, observing that the protection of a *bona fide* purchase is necessary only when the plaintiff has a prior equity which cannot be barred or avoided except by the union of the legal title with an equity arising from the payment of the money and receiving a conveyance without notice, and with a clear conscience, said: "Notice must be denied previous to and down to the time of paying the money and the delivery of the deed." In the other case, the language of the court was: "The answer of Greenwood & Co. should have positively denied notice of the fraud down to the time of paying the consideration and receiving the deed." The general rule announced in those cases applies where the payment of the consideration and the acceptance of a deed by the purchaser occur at different times. In such cases, the denial of notice, in order to support a claim to protection as a *bona fide* purchaser, must relate both to the time when the deed is delivered, and to that when the consideration was paid. But, where it appears upon the face of the answer that the purchase for a certain price and the delivery of the deed were at the same time, and as parts of one transaction, the denial of

notice until the defendant had made the purchase is equivalent to a denial of notice at the delivery of the deed. McDonald's answer denies every circumstance set forth in the bill from which notice could be inferred. He expressly alleges in his answer that he never heard of any claim of the plaintiffs until he had made the purchase and paid in cash the sum of $8500 for the property. And in his deposition he distinctly states that he first knew of the plaintiffs' claim when he received notice of this suit. His evidence is 'not contradicted by anything in the record. This is a substantial compliance with the rule announced in the cases last cited.

It is proper to say that the present case is unlike *Rector* v. *Gibbon*, 111 U. S. 276. That case did not present any question in respect to the rights of a *bona fide* purchaser for value from the person to whom the Hot Springs Commission accorded the right to purchase.

*The decree is reversed, with directions to dismiss the bill.*