JOHN J. SCHOTT, APPELLANT, V. L. P. DOSH ET AL.,
APPELLEES.

FILED SEPTEMBER 16, 1896.   No. 6629.

**Deeds: QUITCLAIM DEEDS: REGISTRATION: QUIETING TITLE.** The holder of a quitclaim deed, properly recorded, who purchases in good faith and without notice of a prior unrecorded conveyance, takes the title in preference to the grantee under such unrecorded conveyance.

APPEAL from the district court of Nuckolls county. Heard below before HASTINGS, J.

See opinion for references to authorities.

*John H. Ames* and *E. F. Pettis,* for appellant.

*Montgomery & Hall, contra.*

IRVINE, C.

This action was by Schott against L. P. Dosh, J. R. Dosh, and James K. O. Sherwood, to quiet title to land described as the west one-half of section 31, township 3 north, of range 8 west, in Nuckolls county.  The only defendant to answer, and the only one referred to in the decree, is Sherwood, and it is not necessary to consider any rights except those existing as between him and the plaintiff.   It is conceded that a patent was issued conveying the land in controversy to George L. Bittenger.   The plaintiff claims under a deed from Bittenger and wife to him, dated June 23, 1870.   This deed was not, however, recorded until June 23, 1890, and was not even then entitled to record for want of a certificate of acknowledgment.   Sherwood deraigns his title as follows: A quitclaim deed from Bittenger and wife to L. P. Dosh, dated August 22, 1882, recorded September 19, 1882.   Warranty deed from L. P. Dosh and wife to J. R. Dosh, dated Oc-

tober 27, 1882, recorded November 20, 1882. Warranty deed from J. R. Dosh and wife to Sherwood, dated January 13, 1883, recorded April 24, 1885. Subsidiary to the latter chain of conveyances are certain tax deeds, followed by conveyances to L. P. Dosh and Sherwood by the grantees named therein. While these tax deeds are material on the question of evidence hereinafter discussed, it is conceded that they are on their face void and may be excluded in tracing the title. On appropriate pleadings, the answer of Sherwood praying for cross-relief, the court found generally in favor of Sherwood and entered a decree quieting title in him. From this the plaintiff appeals.

The questions presented by the record are as follows: First—Does a quitclaim deed, properly recorded, in favor of one who purchases in good faith and without notice of a prior unrecorded conveyance, take precedence of such conveyance? Second—If so, does the evidence in this case sustain the finding of the trial court that Sherwood was such a *bona fide* purchaser without notice? Third— If the first question should be answered in the negative, are subsequent grantees under deeds of warranty subject to outstanding equities because of a remote quitclaim deed in their chain of title? On the authority of *Snowden v. Tyler*, 21 Neb., 199, the case might probably be solved in favor of the defendant on the last question, regardless of the others; but for several reasons we shall consider the first two stated. One reason is that while the first question has several times been brought to the attention of the court, the cases have always been complicated by facts which have rendered an authoritative decision impossible, and the *dicta* which have been expressed have not served to remove the generally prevailing doubt on this question of very apparent practical importance. The second reason is that in many, and in fact all the earlier, cases holding that the grantee under a quitclaim deed is not in such case entitled to protection the reason given is that such a deed does not purport to convey the fee or

even limit the estate, but merely to release any claim which the grantor may have. If this reason be well founded, then it seems illogical to hold that a remote grantee obtains any greater title than the immediate grantee, both claiming through a deed which purports to convey the same interest. We shall direct our attention, therefore, to the first question, and in the first place to a consideration of the former expressions of this court.

In *Lincoln Building & Savings Association v. Hass*, 10 Neb., 581, it was said: "The effect of this quitclaim deed was only to pass the naked legal title, and changed no equities of the parties." A consideration of the case discloses that no interest whatever appeared of record or otherwise in the grantor, a deed whereby it was intended to convey an interest by mistake omitting the land in controversy from the description. The question was between the grantee under the quitclaim deed and a mortgage from the same grantor. No protection was claimed under the recording acts and the decision was wholly foreign thereto. We refer to the case only because it is cited in argument, and because it has been several times cited as supporting the doctrine that the grantee under a quitclaim deed is not protected.

In *Hoyt v. Schuyler*, 19 Neb., 652, it was held that there was a record of the prior deed sufficient to impart notice. It was also stated that it neither was alleged in the petition nor claimed in the brief that the appellant was a *bona fide* purchaser. Therefore, the following statement of the court was merely *obiter*, that "the form of the conveyance repels the inference of a *bona fide* purchaser;" as was also the further statement that the plaintiff "merely took the interest of Carter, and as he had previously conveyed all his right, title, and interest in the lot, the grantee under the second deed took nothing." Nevertheless, the court, evidently for the purpose of preventing these *obiter dicta* from being taken as announcing an absolute rule, added that "a party who claims title under a quitclaim deed from one who had formerly conveyed his

title to another, and the effect of which will be to deprive the first grantee of his title, must make a clear case of *bona fides* on his part before his title will be sustained."

In *Snowden v. Tyler*, 21 Neb., 199, remote grantees under a deed of quitclaim were protected. It was claimed that the quitclaim deed passed no title and that therefore none passed under deeds from the grantee therein. The court said: "The rule, no doubt, is that a person who purchases of another real estate, and receives a quitclaim deed only therefor, is bound to inquire and ascertain at his peril what outstanding equities exist, if any, against the title.   *   *   *   We are not prepared to hold, however, that a quitclaim deed, where the grantor has already conveyed, will not in any case convey title.   *   *   *   It is the policy of the law that titles to real estate shall become matters of certainty as far as possible, and that one who acts in good faith in purchasing, and pays the value of the property, shall be protected in his purchase." The court therefore put the protection of remote grantees not upon the illogical ground that while a quitclaim deed purports to and does only pass the grantor's estate, the magic of a covenant of warranty in a subsequent deed will enlarge that estate beyond what the first deed purports to convey, but the conclusion was placed upon the logical ground that one who finds a complete chain of conveyances to his grantor, without apparent defects and without notice of outstanding equities, and who pays value, will, under the recording acts, be protected. This logic applies as well to immediate grantees as to a remote grantee.

In *Lavender v. Holmes*, 23 Neb., 345, the subject was again considered, many of the cases reviewed, and the conclusion reached that "while we concede it to be the general rule as stated by the authors above cited, that a purchaser who acquires title by a quitclaim deed is not a *bona fide* purchaser without notice of existing equities, yet we think it is sufficiently shown that there are exceptions to this rule, and that this case falls within the ex-

ception." This was not, however, a case involving a construction of the recording acts.

In *Pleasants v. Blodgett*, 32 Neb., 427, the language already quoted from *Hoyt v. Schuyler, supra*, to the effect that a conveyance by quitclaim "repels the inference of a *bona fide* purchaser," was repeated; but the holding of the court was that the grantee had actual notice of the adverse claim. This was also the doctrine of the court on the rehearing of the same case (39 Neb., 741).

A case much relied on by the appellant is *Bowman v. Griffith*, 35 Neb., 361; but a careful examination of the case convinces us that it is entirely without application. It is true that one of two reasons given for not holding that an estoppel *in pais* existed against a grantor was that the grantee had accepted a quitclaim deed; but no question was involved of the construction of the recording act, and the reasons for enforcing an estoppel *in pais*, which would produce an effect equivalent to a covenant for title, are quite different from those which control the construction of the recording act. The case was very complicated in its facts, and we cannot hope to state it more briefly than it is stated in the lucid language of the author of the opinion. Space does not permit that we should repeat this statement to show the inapplicability of the case. Suffice it to say that the question there presented was whether one who had accepted a deed containing recitals showing that it was made to correct a former deed purporting to convey land which had in fact been conveyed to another person, could set up title as against that other person, and contrary to the terms of the deed which he had accepted.

The foregoing review we think shows that while the court has expressed itself to the effect that a quitclaim deed passes no more than the grantor's present interest, this expression has been used to state a general truth and not as a construction of the recording act, and that so far as concerns the rights of a grantee under a quitclaim deed by virtue of the recording act, the court, while inti-

mating that the tender of a quitclaim deed puts a purchaser on inquiry, has nevertheless always intimated that on proof of *bona fides* he is entitled to protection; and in one case, at least, has afforded him protection.

Cases elsewhere are conflicting. In some states it is held that a quitclaim deed conclusively charges the grantee with notice of outstanding equities, including prior unrecorded conveyances. (*Smith's Heirs v. Branch Bank at Mobile*, 21 Ala., 125; *Leland v. Isenbeck*, 1 Ida., 469; *McAdow v. Black*, 6 Mont., 601; *Snow v. Lake*, 20 Fla., 656.) To these may be added some others, but they require comment. *Woodfolk v. Blount*, 3 Hayw. [Tenn.], 146, frequently cited as sustaining that view, really leaves the question undecided. In *Bragg v. Paulk*, 42 Me., 502, the conveyance was a mortgage to secure a past debt, and the court held that this did not constitute a purchase for a valuable consideration. *Marshall v. Roberts*, 18 Minn., 405, was based on the construction of a peculiar statute, and Oregon having adopted the same statute (*Baker v. Woodward*, 12 Ore., 3), follows the Minnesota case in its construction. The effect of the Minnesota decision was, however, to induce the legislature to amend the statute; and since the amendment the Minnesota court has held that a quitclaim deed stands on the same footing as any other conveyance. (*Strong v. Lynn*, 38 Minn., 315.) In South Dakota the author of the principal opinion announces the rule that a quitclaim deed charges a purchaser with notice; but Judge Corson dissented on this point, and Judge Kellam only concurred on the ground that there was actual notice. The court was composed of but three judges. (*Parker v. Randolph*, 59 N. W. Rep. [S. Dak.], 722.) In Michigan the court was once evenly divided on the question, Chief Justice Cooley and Judge Sherwood holding that the quitclaim deed afforded protection, Judges Campbell and Champlin holding that it did not. (*Deveaux v. Fosbender*, 57 Mich., 579.) Recently, however, an unanimous court has adopted the view of Judges Campbell and Champlin. (*Peters v. Cartier*, 80

Mich., 124.)   Texas, after much vacillation and without any careful discussion of the authorities elsewhere, has adopted a similar view, but restricted it closely to a technical release as distinguished from a deed of bargain and sale without covenants. (*Richardson v. Levi*, 67 Tex., 359.) Nearly all the recent cases adopting the view which we have been discussing cite the case of *Johnson v. Williams*, 37 Kan., 179.   This case cited most of the authorities then existing, and held that one who claims under a quitclaim deed is not a *bona fide* purchaser with respect to outstanding equities shown by the records, or which are discoverable by the exercise of reasonable diligence on making proper examination and inquiries.   It admitted that a purchaser under a quitclaim deed may be a *bona fide* purchaser with reference to a prior unrecorded deed of which he has no notice.

On the other hand, the following cases hold, and we think with better reason, that there is no distinction as to the form of conveyance; that in this country and in modern times a deed of quitclaim is not merely a release, but operates to pass the grantor's title, even to one who could not at common law accept a release; that the recording acts draw no distinction; that under them the question is not under what form of conveyance one claims, but whether one is a *bona fide* purchaser, and that, therefore, the holder of a quitclaim deed is entitled to the same protection as one under a deed of bargain and sale or containing covenants of warranty: *Moelle v. Sherwood*, 148 U. S., 21; *Wilhelm v. Wilken*, 44 N. E. Rep. [N. Y.], 82; *Graff v. Middleton*, 43 Cal., 341; *Bradbury v. Davis*, 5 Colo., 265; *Brown v. Banner Coal & Coal Oil Co.*, 97 Ill., 214; *Chapman v. Sims*, 53 Miss., 154; *Willingham v. Hardin*, 75 Mo., 429; *Cutler v. James*, 64 Wis., 173.   In several of the states the cases cited overrule earlier cases holding the contrary view.   The tendency of the decisions is uniformly in favor of the quitclaim deed, except in Iowa, where it was formerly held that the holder thereof was protected and it is now held that he is not. (*Pettingill*

17

*v. Devin*, 35 Ia., 344; *Steele v. Sioux Valley Bank*, 79 Ia., 339.)

The question has been so much discussed that any extended inquiry into the reasons would not be novel. Those given in support of the rule denying quitclaim deed protection are two in number. The first we have already alluded to:—Such a deed does not purport to convey any definite estate, but merely the grantor's interest. This reason refers back to the obsolete doctrine of common law releases. In modern law it is not supposed in any case that a grantor is conveying more than he owns. Our statute provides that every conveyance shall pass all the grantor's interest, unless a contrary intent can be reasonably inferred from the terms used. (Compiled Statutes, ch. 73, sec. 50.) There is nothing, therefore, in the fact that a grantor only purports to convey his interest which should charge a purchaser with notice of a prior unrecorded conveyance. The other reason given is that the fact that the grantor declines to warrant the title is enough to arouse suspicion. This may or may not be true according to circumstances. So far as the reason has any force generally it seems to be fairly met by the suggestion of Mr. Rawle in his work on Covenants for Title, that the fact that a personal covenant is required is itself a circumstance casting suspicion upon the title conveyed. A conveyance by quitclaim is by no means uncommon in modern times when there are no outstanding equities; and it is certainly a conceivable case that a man may be willing to accept such a conveyance, for the very reason that he is confident that he obtains a perfect title which would render covenants of no service. Aside from the foregoing reasons for denying a quitclaim deed protection, the cases holding that doctrine nearly all depend for their support upon certain *dicta* in the supreme court of the United States, notably the case of *May v. Le Claire*, 11 Wall. [U. S.], 217. Judge Brewer, in the district court for this district, in the absence of a direct adjudication by this court, felt constrained to follow these

*dicta* in *Hastings v. Nissen*, 31 Fed. Rep., 597; but in *Sherwood v. Moellc*, 36 Fed. Rep., 478, a case precisely like that before us, and involving some of the same conveyances, he resolved it in favor of Sherwood, intimating a doubt as to the general application of the old rule, but basing his decision on the ground that *Snowden v. Tyler, supra,* protected a remote grantee. This case went to the supreme court of the United States (148 U. S., 21), and was there affirmed, Judge Brewer concurring, on the broad ground that the receipt of a quitclaim deed does not prevent a party from becoming a *bona fide* holder, and that the previous *dicta* of the court were not sound in principle.

Section 45, chapter 73, Compiled Statutes, defines a purchaser as embracing "every person to whom any real estate or interest therein shall be conveyed for a valuable consideration." The term "deed" is defined in section 46 as embracing every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity, except last wills, and leases for one year or for a less time. The recording act (Compiled Statutes, ch. 73, sec. 16) provides that deeds shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and such deeds, mortgages, or other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice, whose deeds, mortgages, and other instruments shall be first recorded. In view of the definitions given of "deed" and "purchaser," we cannot hold that section 16 does not apply to the grantee under a quitclaim deed without a judicial amendment of the plain language of the statute.

This brings us to the question of fact. Does the evidence sustain the finding that Dosh was an innocent purchaser from the patentee? We have no hesitation in

saying it does. The evidence discloses that before Bittenger obtained a patent for the land he went to Pennsylvania, where he made a sale of it to Schott. The conveyance to Schott was not recorded and the land remained wild and unoccupied until shortly before this action was commenced. Taxes accumulated and the land was sold therefor to one Furst. A tax deed was issued to him. Several years thereafter Furst conveyed to Dosh, Dosh paying him $1,350 for the land. At this time it was stipulated that the land was worth $1,440. Dosh testifies that before he purchased he went to Nuckolls county and looked at the land, which was at that time open, unoccupied prairie. He also examined the record as to the title and found the patent title in Bittenger, whom he found afterwards and from whom he obtained a quitclaim deed for $100. He had theretofore made his contract with Furst. Dosh lived in Iowa, where tax titles were regarded as good, and supposed the title he had acquired from Furst was good. He paid Bittenger for his title because he thought he would perfect thereby his title to the land and make it more readily salable. It is argued that his testimony as to finding the title in Bittenger is false, because the patent of Bittenger was not recorded in Nuckolls county at that time. It will be observed, however, that he does not testify that he ascertained the title solely from the county records of Nuckolls county. His testimony is that he went to Nuckolls county to look at the land and found it unoccupied, and that he examined "the records," without saying what records, and found the patent title in Bittenger. He was not cross-examined upon this, and we cannot presume that he committed perjury merely because the Nuckolls county records did not then disclose title in Bittenger. It appeared from them at that time that the title was in the United States, and an examination of the records of the land office would have disclosed title in Bittenger, as Dosh testified he found it. The maxim that ignorance of the law excuses no one, is not so broad in its application that a mistake

of law cannot be shown in evidence for the purpose of ascertaining the state of one's mind or one's motive. At the time in question the effect of a tax deed in this state was doubtful. Dosh, living in Iowa, might, as he testifies he did, place more reliance on the tax title than the law of this state warranted. He paid almost the full value of the land to the tax purchaser. There would be nothing in the fact that the patentee, who had apparently neglected the land for twelve years, was willing to convey to him for a small sum, which would be calculated to apprise him of a prior unrecorded conveyance. Especially is this true in view of the fact that by proper litigation between him and the patentee he would be entitled to subrogation at least to the whole tax claim; and the existence of the outstanding tax title which he bought would sufficiently account, if investigation were necessary, for the tender to him of a quitclaim deed instead of one with covenants of warranty. It would tax the patience of any one at all familiar with the history of such transactions in this state to argue that there was anything unusual, suspicious, or calculated to inform a person of outstanding equities, in the fact that a deed of quitclaim was tendered under such circumstances. The evidence is in these respects uncontradicted. The court found that Dosh was an innocent purchaser. On apparently the same state of evidence on some of the same conveyances the supreme court of the United States unanimously held the same. We cannot disturb the finding and we think it is right.

It is suggested at the close of the brief of the appellant that the trial in the district court was formal only and that the judgment "was in fact, though not of record, entered practically by consent, so as to make a record reviewable by this court." We must, however, give the finding of the trial court the effect which the record entitles it to. If it is true that the finding was made practically by consent, as the appellant states, the record should have so disclosed, and that would have precluded

the plaintiff from any right to review. Not so appearing of record, we must presume the judgment was the deliberate judgment of the trial court, on the issues joined.

AFFIRMED.