[Civil No. 2557.   Filed February 21, 1927.]

[253 Pac. 435.]

PHOENIX TITLE & TRUST COMPANY, a Corporation, Appellant, v. OLD DOMINION COMPANY, a Corporation, Appellee.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Morris & Malott, for Appellee.

LOCKWOOD, J.—Phoenix Title & Trust Company, a corporation, hereinafter called appellant, brought suit to foreclose a certain mortgage on lot 8, block 5, East Globe, Gila county, Arizona. There were various defendants made parties to the suit, among them Old Dominion Company, a corporation, which we will hereafter call appellee, as the other defendants defaulted or the action was dismissed as to them. There is no dispute as to the facts, and, so far as necessary for our consideration, they were found by the trial court to be as follows:

On May 31, 1917, Annie Cadman agreed to sell to Angus McAlpine the premises in question for $500 in cash, and $1,800 to be paid in monthly installments. A warranty deed for the premises was placed in escrow, to be delivered to McAlpine on the payment of the balance of the purchase price, and the agreement itself was recorded on June 4, 1917. February 28, 1918, McAlpine mortgaged the property in question to appellee, but this mortgage was not then recorded. On April 20, 1920, McAlpine gave another mortgage for a valuable consideration to the Hassayampa Creamery Company, hereinafter called the company, on certain parcels of real estate, among which was included the property involved in this suit, which mortgage was recorded in Gila county on the twenty-sixth day of April, 1920. On the twenty-first day of April, 1920, the company assigned the mortgage to appellant, but this assignment was not recorded in Gila county. Appellee herein recorded its mortgage on the twentieth day of June, 1921, and on April 24, 1922, McAlpine completed his payments and the warranty deed was delivered to him and placed on record. On the eighth day of June, 1923, the company made another assign-

ment of its mortgage, which was recorded in Gila county on the thirtieth day of August, 1923.

Default having been made in the payment of the mortgage executed by McAlpine to the company, and by the latter assigned to appellant, these proceedings were instituted to foreclose it, and appellee made a party defendant. The case was tried to the court without a jury, and judgment rendered in favor of appellant foreclosing its mortgage as against all of the defendants except appellee, whose mortgage was held to be prior in right to that of appellant, and from this latter portion of the judgment an appeal has been taken to this court.

The question involved is one of law only, and will be determined by the construction of paragraph 2080, Revised Statutes of Arizona of 1913, Civil Code, which reads as follows:

"2080. All bargains, sales and other conveyances whatever, of any lands, tenements and hereditaments, whether they may be made for passing any estate of freehold or inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing, and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged and filed with the recorder to be recorded, as required by law, or where record is not required, deposited and filed with the recorder; but the same, as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof, or without valuable consideration, shall nevertheless be valid and binding."

It is apparent from the foregoing statement of facts that the mortgage of appellee was prior in time to that of appellant, but was recorded subsequently. If, therefore, appellant be, within the language of the statute, a "subsequent purchaser for valuable con-

sideration without notice," its mortgage was entitled to precedence and the part of judgment appealed from was erroneous.

The trial court found—

"that neither the Hassayampa Creamery Company at the time of the execution and delivery to it of said promissory note and mortgage by the defendants Angus McAlpine and Lillian McAlpine, nor the Phoenix Title & Trust Company, at the time it acquired said note and mortgage by assignment from the Hassayampa Creamery Company, had any knowledge of the prior unrecorded mortgage executed by the defendants Angus McAlpine and Lillian McAlpine to the Old Dominion Company, on said lot 8, block 5, of East Globe, and only such notice thereof as they were chargeable with by the language of said mortgage."

It is the contention of appellee, however, that the language of appellant's mortgage itself was of such a character that as a matter of law it was notice to appellant and its predecessor in interest, the company, of the outstanding mortgage of appellee. The language of the mortgage relied on as giving notice reads as follows:

"Also all the *right, title, and interest of the mortgagees* in and to that said tract of land in the city of Globe, county of Gila, described as lot eight (8) block five (5), according to map number one of East Globe on file in the office of the county recorder of Gila county. The interest of said mortgagors in said premises being under a contract to purchase from Annie Cadman, dated the 31st day of May, 1917, and recorded in the office of the county recorder of Gila county, Arizona, on the 4th day of June, 1917, in book 4 of Miscellaneous Records at page 132." (Italics ours.)

Briefly stated, it is the claim of appellee that, when a conveyance specifically states it is only the right, title and interest of the mortgagor or grantor, and not the property itself, which is conveyed, it is

constructive notice to the mortgagee or purchaser that there are outstanding equities, and he is bound thereby, even though such equities do not appear of record, and he has no actual notice thereof.

It is admitted that section 2080, *supra,* was taken by us from Texas. For this reason we shall first consider the construction of that statute by the Supreme Court of Texas, prior to its adoption by Arizona. The early case of *Rodgers* v. *Burchard,* 34 Tex. 442, 451, 7 Am. Rep. 283, involved a question as to the effect of an unrecorded deed, relied upon as against a subsequent recorded deed conveying all the "right, title, and interest" of the grantors. In considering this case, the court says:

"It is held in this state that a subsequent deed, for a valuable consideration paid, and without notice, which has been duly recorded, shall take precedence of a prior unrecorded deed. . . . The deed from the heirs of Gafford to Rodgers was a quitclaim deed, and could only convey such interest as they had at the time of making the deed. . . . A quitclaim, or deed of release of all one's right, title and interest, purports to convey, and does convey no more than the present, interest of the grantor. . . . 'A deed which simply purports to pass the right, title and interest of the grantor will not exclude the operation of a prior unregistered mortgage.' "

In *Harrison* v. *Boring,* 44 Tex. 255, the same question was raised, and the court said:

"A quitclaim or deed of release of all one's right, title, and interest purports to convey and does convey no more than the present interest of the grantor, . . . "

—and referring to a charge to the jury that lack of actual notice of a prior unrecorded easement would make the purchaser under a later recorded deed a *bona fide* purchaser, "this charge was erroneous, if their deed was only a quitclaim deed, under the

decision of this court and of that of the Supreme Court of the United States.''

The Supreme Court of Texas has in later cases qualified and limited the scope of these decisions, but has never directly reversed itself on the main point, which is that, when an instrument, even though recorded, on its face conveys only the ''right, title, and interest'' of the grantor, the grantee is not a *bona fide* purchaser without notice within the statute as against a prior unrecorded instrument of which he had no actual notice, in the absence of some special proof or circumstances. This rule is followed in many jurisdictions, and was early laid down by the Supreme Court of the United States in a long series of decisions. *Baker* v. *Humphrey*, 101 U. S. 494, 25 L. Ed. 1065 (see, also, Rose's U. S. Notes); *Hanrick* v. *Patrick*, 119 U. S. 156, 30 L. Ed. 396, 7 Sup. Ct. Rep. 147; *Oliver* v. *Piatt*, 44 U. S. (3 How.) 333, 11 L. Ed. 622; *May* v. *Le Claire*, 78 U. S. (11 Wall.) 217, 20 L. Ed. 50; *Villa* v. *Rodriguez*, 79 U. S. (12 Wall.) 323, 20 L. Ed. 406.

The matter, however, again came before the court in the case of *Moelle* v. *Sherwood*, 148 U. S. 21, 28, 37 L. Ed. 351, 13 Sup. Ct. Rep. 426, 428, and Mr. Justice FIELD in his opinion discussed the rule previously announced, and the reasons *pro* and *con*, in the following language:

''The doctrine expressed in many cases that the grantee in a quitclaim deed cannot be treated as a *bona fide* purchaser does not seem to rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, that the grantor merely releases to the grantee his claim, whatever it may be, without any warranty of its value, or only passes whatever interest he may have at the time, indicates that there may be other and outstanding claims or interests which may possibly affect the title of the property, and, therefore, it is said that the grantee, in accepting a conveyance of that

kind, cannot be a *bona fide* purchaser and entitled
to protection as such; and that he is in fact thus
notified by his grantor that there may be some de-
fect in his title and he must take it at his risk. This
assumption we do not think justified by the language
of such deeds or the general opinion of conveyancers.
There may be many reasons why the holder of prop-
erty may refuse to accompany his conveyance of it
with an express warranty of the soundness of its
title or its freedom from the claims of others, or to
execute a conveyance in such form as to imply a
warranty of any kind even when the title is known
to be perfect. He may hold the property only as a
trustee or in a corporate or official character, and
be unwilling for that reason to assume any personal
responsibility as to its title or freedom from liens,
or he may be unwilling to do so from notions peculiar
to himself; and the purchaser may be unable to
secure a conveyance of the property desired in any
other form than one of quitclaim or of a simple
transfer of the grantor's interest. It would be un-
reasonable to hold that, for his inability to secure
any other form of conveyance, he should be denied
the position and character of a *bona fide* purchaser,
however free, in fact, his conduct in the purchase
may have been from any imputation of the want of
good faith. In many parts of the country a quit-
claim or a simple conveyance of the grantor's inter-
est is the common form in which the transfer of
real estate is made. A deed in that form is, in such
cases, as effectual to divest and transfer a complete
title as any other form of conveyance. There is
in this country no difference in their efficacy and
operative force between conveyances in the form of
release and quitclaim and those in the form of grant,
bargain and sale. If the grantor in either case at the
time of the execution of his deed possesses any claim
to or interest in the property, it passes to the grantee.
In the one case, that of bargain and sale, he im-
pliedly asserts the possession of a claim to or in-
terest in the property, for it is the property itself
which he sells and undertakes to convey. In the other
case, that of quitclaim, the grantor affirms nothing
as to the ownership, and undertakes only a release of

any claim to or interest in the premises which he may possess without asserting the ownership of either. If in either case the grantee takes the deed with notice of an outstanding conveyance of the premises from the grantor, or of the execution by him of obligations to make such conveyance of the premises, or to create a lien thereon, he takes the property subject to the operation of such outstanding conveyance and obligation, and cannot claim protection against them as a *bona fide* purchaser. But in either case if the grantee takes the deed without notice of such outstanding conveyance or obligation respecting the property, or notice of facts which, if followed up, would lead to a knowledge of such outstanding conveyance or equity, he is entitled to protection as a *bona fide* purchaser, upon showing that the consideration stipulated has been paid and that such consideration was a fair price for the claim or interest designated. The mere fact that in either case the conveyance is unaccompanied by any warranty of title and against incumbrances or liens, does not raise a presumption of the want of *bona fides* on the part of the purchaser in the transaction. Covenants of warranty do not constitute any operative part of the instrument in transferring the title. That passes independently of them. They are separate contracts, intended only as guaranties against future contingencies. The character of *bona fide* purchaser must depend upon attending circumstances of proof as to the transaction, and does not arise, as often though, we think, inadvertently, said, either from the form of a conveyance or the presence or the absence of any accompanying warranty. Whether the grantee is to be treated as taking a mere speculative chance in the property, or a clear title, must depend upon the character of the title of the grantor when he made the conveyance; and the opportunities afforded the grantee of ascertaining this fact and the diligence with which he has prosecuted them, will, besides the payment of a reasonable consideration, determine the *bona fide* nature of the transaction on his part.

"In the present case every available means of ascertaining the character of the title acquired, both at the time of his own purchase and at the time the

purchases of his predecessors in interest were made, were pursued by the complainant. *When he looked at the records of the county where the property was situated, he saw that the only deed executed by the patentee, the original source of title, was for property other than the premises in controversy.* No mere speculative investment in the chance of obtaining a good title could therefore properly be imputed to him.'' (Italics ours.)

And in the companion case of *United States* v. *California & O. Land Co.,* 148 U. S. 31, 37 L. Ed. 354, 13 Sup. Ct. Rep. 458 (see, also, Rose's U. S. Notes), decided on the same day, Justice BREWER spoke as follows:

''As against these evidences and conclusions of good faith but a single proposition is raised, one upon which the dissenting judge in the circuit court of appeals rested his opinion, and that is the proposition that the conveyances from the road company were only quitclaim deeds, and that a purchaser holding under such a deed cannot be a *bona fide* purchaser, and in support of this proposition reference is made to the following cases in this court: [Citing cases.] The argument, briefly stated, is that he who will give only a quitclaim deed in effect notifies his vendee that there is some defect in his title, and the latter, taking with such notice, takes at his peril. It must be confessed that there are expressions in the opinions in the cases referred to which go to the full length of this proposition. Thus, in *Baker* v. *Humphrey,* 101 U. S. 494, 499, 25 L. Ed. 1065, 1067, Mr. Justice SWAYNE, in delivering the opinion of the court, uses this language: 'Neither of them was in any sense a *bona fide* purchaser. No one taking a quitclaim deed can stand in that relation.' Yet it may be remarked that in none of these cases was it necessary to go to the full extent of denying absolutely that a party taking a quitclaim deed could be a *bona fide* purchaser; and in the latter case of *McDonald* v. *Belding,* 145 U. S. 492, 12 Sup. Ct. Rep. 892, 36 L. Ed. 788, it was held, in a case coming from Arkansas and in harmony with the rulings of the

supreme court of that state, that while ordinarily a person holding under a quitclaim deed may be presumed to have had knowledge of imperfections in his vendor's title, yet that the rule was not universal, and that one might become a *bona fide* purchaser for value although holding under a deed of that kind; and in that case the grantee so holding was protected as a *bona fide* purchaser. While in the case of *Moelle* v. *Sherwood*, just decided, *ante*, 350, the general question was examined, and it was held that the receipt of a quitclaim deed does not of itself prevent a party from becoming a *bona fide* holder, and the expressions to the contrary, in previous opinions, were distinctly disaffirmed.''

These cases have been cited with approval in *Babcock* v. *Wells*, 25 R. I. 30, 54 Atl. 599, *Southern Ry.* v. *Carroll*, 86 S. C. 56, 138 Am. St. Rep. 1017, 67 S. E. 4, *Marshall* v. *Pierce*, 136 Ga. 543, 71 S. E. 893, *Smith* v. *Fuller*, 152 N. C. 7, 67 S. E. 48, *Mosier* v. *Momsen*, 13 Okl. 41, 74 Pac. 905, *McDougall* v. *Murray*, 57 Wash. 76, 26 L. R. A. (N. S.) 159, 106 Pac. 490, *Schott* v. *Dosh*, 49 Neb. 187, 59 Am. St. Rep. 531, 68 N. W. 346, *Ellison* v. *Torpin*, 44 W. Va. 414, 30 S. E. 183, and the rule laid down therein followed. Even in Texas, in *Finch* v. *Trent*, 3 Tex. Civ. App. 568, 22 S. W. 132, the court says:

''While the doctrine, that a quitclaim deed will not support a title founded alone upon a *bona fide* purchase has been the recognized rule in this state since the decisions in *Rodgers* v. *Burchard*, 34 Tex. 453 [7 Am. Rep. 283], and *Harrison* v. *Boring*, 44 Tex. 260, the trend of the later cases seems to be toward a restriction of the rule. It is worthy of note in this connection, that the Supreme Court of the United States, *on the authority, mainly of whose decisions the rule was first adopted and followed here* . . . has, in two well considered cases, decided on the 6th day of last March, reviewing the previous decisions of that court, entirely rejected the rule as being more arbitrary and technical than sound. . . . '' (Italics ours.)

The question is one of first impression in this state, and we are therefore at full liberty to adopt whichever rule seems to us in consonance with the principles of equity and justice, if we are not bound by the Texas cases. It is true that we have usually followed the doctrine that when we take a statute from another state we take it with the construction placed upon it by the courts of that state. *Territory* v. *Delinquent Tax List,* 3 Ariz. 117, 21 Pac. 768; *Cheda* v. *Skinner,* 6 Ariz. 196, 57 Pac. 64; *Skaggs* v. *State,* 24 Ariz. 191, 207 Pac. 877.

This rule, however, is not one which is mandatory and absolutely binding on us, and we have the right, if we consider another construction more in accord with the fundamental principles of logic, common sense and justice, and of our public policy to adopt it. *Kingsbury* v. *State,* 28 Ariz. 86, 235 Pac. 140; *State* v. *Meath,* 84 Wash. 302, 147 Pac. 11; *In re McKennan's Estate,* 25 S. D. 369, 33 L. R. A. (N. S.) 606, 126 N. W. 611; *Great Western Sugar Co.* v. *Lumber Co.,* 25 Colo. App. 1, 136 Pac. 553; *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197; *Gage* v. *Smith,* 79 Ill. 219; *Jamison* v. *Burton,* 43 Iowa, 282. We therefore shall examine the question to see which rule is most consistent with our general conditions and the spirit of our laws.

Until the establishment of the system of recording conveyances, it was extremely difficult for any man who purchased property to ascertain whether or not he had in fact secured a good title. In many cases innocent purchasers who had made the utmost effort to determine whether there were outstanding encumbrances, and who had in all good faith and sincerity paid a full consideration for the property, lost it on account of hidden equities of which they had neither knowledge, nor means of obtaining it.

This condition, which was bad enough in the early days of the English and American law when conveyances were comparatively rare, grew intolerable as the complexity and frequency of such transactions increased, and the various recording acts were passed for the express purpose of providing a place and a method by which an intending purchaser could safely determine just what kind of a title he was in fact securing. Such statutes are now found in practically every state of the Union, and there has grown up, not only in the bar, but among the general laity, the profound conviction that, if the public records show a clear title in a grantor, the prospective purchaser may safely buy the property, unless he has notice of such facts as would at least put him on inquiry. That such an interpretation of the recording acts is beneficial in the long run to all honest owners or prospective owners of real property is obvious. If the law provides a place where any man who owns an interest in real estate can give notice of it to all the world with the assurance that his rights will be protected thereby, and a prospective purchaser, on the other hand, can with equal safety investigate, and be confident that no rights not disclosed therein are valid against him in the absence of his knowledge thereof, we can hardly imagine a more beneficial institution. We think, therefore, that we should construe the recording acts so as to afford the greatest possible protection to the man who in good faith endeavors to comply with them.

We are satisfied that on every consideration of justice, equity and good faith the rule laid down in Texas is not in accord with the general spirit of our institutions and recording acts, and should not be sustained by us merely because that court enunciated it before we adopted our statute. No injustice can be done by such a holding. No property rights have vested relying upon the Texas rule. In every case

when the question could possibly arise it is not the one who took under the prior unrecorded instrument who was deceived; it is, on the contrary, the subsequent purchaser who has in good faith been diligent, and relied on the records, who has been misled to his injury by the first purchaser, who has neglected the plain warning of the statute. "Equity favors the diligent and not those who sleep on their rights," and the Texas rule can only be invoked to defeat a claim which exists solely on account of the laches of the party who relies on that rule.

For the foregoing reasons we decline to follow the doctrine declared by the Supreme Court of Texas, and hold that an instrument quitclaim in its form does not, because of such form, prevent a purchaser taking under it from being a *bona fide* purchaser for a valuable consideration in good faith, nor does it impose any greater burden on him in proving such good faith and consideration than any other conveyance with full warranty, or of itself put him on any inquiry whatever as to any defect or hidden equity in his title.

We have examined the other contentions of appellee, but think they are without merit in view of our holding on the main point in issue.

The findings of the trial court are explicit that neither appellant nor its assignee had any actual notice whatever of the prior mortgage of appellee, nor any constructive notice except the language of the mortgage, and the conclusions of law are based explicitly on such alleged notice. Since, as we have held, the language of the mortgage imputed no constructive notice to it, it follows that the judgment was erroneous in so far as it gave priority to appellee's mortgage.

It is ordered that the judgment be modified by striking from the second paragraph thereof the words

"except Old Dominion Company," and, as so modified, it is affirmed.

ROSS, C. J., and McALISTER, J., concur.