[File No. 6951]

ROBERT T. CROAK and Betty Croak, Respondents, v. ED. WITTE-MAN, Tillie Egan, Louisa McIlwain, Christena K. Simon, Theresa Simon, Leo Weber and John Weber, Interveners and Appellants.

(17 NW(2d) 542)

Opinion filed February 8, 1945

*O. B. Benson,* for appellants.

594

*W. H. Adams,* for respondents.

MORRIS, J. The plaintiffs brought this action against the defendant Witteman to quiet title to a quarter section of land in Bottineau County. The appellants were permitted by stipulation to intervene. The issues are between the plaintiffs and the interveners. The latter appeal from a judgment of the district court decreeing that the plaintiffs are the owners in fee and that the interveners are forever debarred and enjoined from asserting claim to any estate or interest in or lien or incumbrance on the land herein involved.

The plaintiffs base their title upon the following conveyances: a homestead patent from the United States of America to Joseph Schutkowskie dated June 4, 1906; a warranty deed to Simon Tuskie dated September 8, 1917, executed by Joseph Schutkowskie, a widower, and a quit-claim deed from Simon Tuskie, a bachelor, to the plaintiffs dated September 15, 1939.

The interveners base their claim to an interest in the land on a written agreement the material parts of which are as follows:

"This agreement, made and entered into this 8th day of September A. D. 1917, by and between, Simon Tuskie, Susanna Jaglewskie, Mary Ann MacLeod, Christine Simon, Theresa Simon, Louise McIlwain, Fannie Weber, and Cecelia Egan, parties of the first part, and John Weber, hereinafter called the party of the second part; Witnesseth;

Whereas: Joseph Schutkowskie has this day by deed of Warranty conveyed to Simon Tuskie the Northwest One Quarter (NW, ¼) of Section Twenty-five (25) Township One hundred Sixty-two (162) Range Eighty (80) on the condition that at the death of said Joseph Schutkowskie his father, or as soon thereafter as agreed upon by all the parties of the first part herein mentioned, to sell and dispose of said land mentioned and described in said Warranty deed, and that the

proceeds of such sale be divided among the parties of the first part above mentioned, share and share alike, and

Whereas, the said Simon Tuskie has this day delivered to said John Weber, party of the second part, the above mentioned Warranty deed, to be held by him as Trustee, in accordance with the terms and conditions of this instrument, and until such reasonable time after the death of said Joseph Schutkowskie as may be agreed upon by all the parties of the first part, to sell and dispose of said land, it is further agreed by and between the parties of the first part hereto, that when the time to sell said land is agreed upon, and the price to be obtained for same is fixed by the parties of the first part, that the negotiations of said sale be carried on by the said John Weber, party of the second part, and that the proceeds of the sale of said land be distributed by said John Weber, according to the terms and conditions of this instrument, said John Weber to be allowed reasonable compensation for service connected with said sale, and it is further understood and agreed, that should any of the parties of the first part hereto, die before the above mentioned Joseph Schutkowskie, the share of such party or parties shall be divided according to the wishes of said party or parties."

The interveners are parties to the agreement or heirs of deceased parties.

From other evidence these further facts are adduced. For some time prior to the execution of the warranty deed above referred to, Simon Tuskie lived with Joseph Schutkowskie upon the premises in question. Although they used different surnames the grantee was the son of the grantor. Schutkowskie died February 11, 1919. Tuskie farmed the land from about 1915 until his death in February 1943, with the exception of three or four years during which he rented it out. He collected and retained all of the rental. During his occupancy he paid no rent either by giving a share of the crop or otherwise. The only evidence of any demand being made on him for rent appears in the testimony of the intervener John Weber who says that during the years shortly following Schutkowskie's death Weber demanded a share of the crop from Tuskie but none was forthcoming. Weber further testified that the warranty deed and the agreement were delivered to him in 1917. He retained the agreement up until the time of the trial.

In 1925 Tuskie asked him for the deed and said he wanted to put it on record. Weber gave the deed to Tuskie. It was recorded in the office of the register of deeds of Bottineau County December 15, 1925, and was never returned to Weber, although Tuskie promised to return it. With the exception of Weber's demand for a share of the crop no claim or assertion of any rights by the interveners appears to have been made until after the death of Simon Tuskie in 1943.

The plaintiff Robert T. Croak is a grand nephew of Simon Tuskie and Joseph Schutkowskie, the original homesteader, was his great grandfather. He went to live with Simon Tuskie on the premises in question in 1912. At that time he was but three years old. He continued to live with Tuskie most of the time until 1929. Since that time with the exception of one summer when he went back and farmed the premises he has lived and worked elsewhere, most of the time in Chicago.

Simon Tuskie failed to pay the taxes on this land for 1930 and subsequent years. On January 23, 1939, the county auditor issued a notice of expiration of period of redemption notifying Tuskie that the land had been sold to the county and that the total amount necessary to redeem was $783.52. The land would have been forfeited to the county at the expiration of 90 days had not the legislature intervened and by chap 236, N. D. Sess. Laws 1939, extended the period of redemption to October 1, 1939. The legislature also authorized, by chap. 227, N. D. Sess. Laws 1939, the county commissioners to compromise amounts due the county for delinquent taxes, penalties and interest by contracting for the payment of the amount of the original tax in ten annual installments.

The plaintiff Robert T. Croak had from time to time over a period of years loaned sums of money to Simon Tuskie, the amount of which according to his uncontradicted testimony was approximately $700. Tuskie agreed with Croak that he would deed the land to him if Croak would keep up the taxes. The quit-claim deed was executed and delivered in accordance with that agreement. On the same day Croak entered into a contract for settlement of delinquent taxes with the county. He compromised the delinquent taxes and penalty and interest which amounted to about $800 by entering into a contract for

the payment of $415.86 'in ten annual installments and paying current taxes in the approximate sum of $54. Since that time he has paid the installments on the contract as they became due.

The interveners contend that the property herein involved was held by Simon Tuskie as the subject of an express trust. The respondents contend that, at most, the facts and circumstances show a resulting trust. Whether an express trust, a resulting trust or no trust at all existed is immaterial in view of the decisive point in this case. That point is whether the plaintiffs were bona fide purchasers. A transferee of real property subject to a trust takes it free of the trust if he is purchaser without notice and for value. Scott, Trusts, § 297.3; 26 RCL 1296; Perry, Trusts, 6th ed, § 815C; 65 CJ pp 776–780. The rule with respect to the purchaser is the same whether the property involved is subject to an express trust or is impressed with a constructive trust. Scott, Trusts, § 474.

The warranty deed from Schutkowskie to Tuskie is absolute on its face. If the plaintiffs acquired title from Tuskie for value and without notice of the claims of the interveners they are entitled to prevail in this action. There can be no question but that the warranty deed was delivered to Tuskie on or about the date thereof. The deed itself imports delivery. Moreover, the agreement above referred to, by reciting that the deed was delivered by Tuskie to John Weber, implies delivery to Tuskie in the first instance. The agreement was not acknowledged. Without an acknowledgment of the persons executing it, it was not entitled to be recorded in the office of the register of deeds. See Rev. Code 1943, §§ 47–1902 and 47–1903. Furthermore, it was not recorded until February 13, 1943, over three years after the plaintiffs received the quit-claim deed. Thus, there was no constructive notice of the agreement. American Mortg. Co. v. Mause River Live Stock Co. 10 ND 290, 86 NW 965.

The instrument by which the plaintiffs obtained title is denominated a quit-claim deed. It purports to "grant, bargain, sell, release, and quit-claim" to the purchasers the land described therein "to have and to hold the above Quit-Claimed premises, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining to the said parties of the second part, their heirs and assigns." Such a

deed if taken in good faith, for value and without notice is sufficient to support a claim of bona fides on the part of the grantees. ˙ Thompson, Real Property, Permanent ed, § 4295; Jones, Real Property in Conveyancing, § 1394; Aitkcn v. Lane, 108 Mont 368, 92 P(2d) 628; Eger v. Brown, 77 Kan 510, 94 P 803, 15 LRA(NS) 459; Phœnix Title & T. Co. v. Old Dominion Co. 31 Ariz 324, 253 P 435, 59 ALR 625. See also note in 59 ALR 632.

The interveners urge as authority the case of Brett v. St. Paul Trust Co. 49 ND 653, 193 NW 317. This case holds that a trustee cannot secure title to trust property in himself personally by adverse possession while the duties of a trustee under an express trust are imposed upon him. In that case the question of bona fide purchaser was not raised. The opinion seems to have been written on the assumption that the plaintiffs who obtained title from the trustee were fully acquainted with the terms and conditions of the trust.

The essential elements of a bona fide purchase are: (1) a valuable consideration, (2) the absence of notice, (3) the presence of good faith. Pomeroy, Equity Jurisprudence, 5th ed § 745. In this case we may consider together the matters of notice and good faith. There being no constructive notice chargeable to. the plaintiffs, the facts must be examined to determine whether they had actual notice or were aware of facts and circumstances which should have impelled them to make further inquiry.

There is no evidence that anyone ever told either of the plaintiffs of the existence of the agreement or that any of the interveners claimed an interest in the land. Neither does there appear to have been any conduct on the part of Tuskie, the interveners or anyone else that would have prompted the plaintiffs to question Tuskie's title. Both of the plaintiffs deny that they had any knowledge of the claims of the interveners. During the time that Robert T. Croak lived with Simon Tuskie the latter farmed the land as his own and paid no rent. The only evidence tending to indicate notice is a purported statement by Robert T. Croak made shortly after the death of Simon Tuskie to the effect that Tuskie had told Croak that he had asked the interveners to help pay taxes on the land but none of them would help. If this admission were conceded it would be but a meager indication that Croak

had notice of the interveners' claims. However, it is not conceded but is definitely denied by Croak who is corroborated by his attorney in whose presence it was said to have been made. The trial court was unimpressed by this claimed admission and found that the plaintiffs had no notice either actual or constructive of the agreement or any claims based thereon. We agree with the trial court that the record shows an absence of notice and the presence of good faith on the part of the plaintiffs.

The remaining element of a bona fide purchase to be considered is whether the plaintiffs were purchasers for value. The deed to them recites a consideration of $1.00. The testimony shows that the actual consideration was antecedent debts in the approximate sum of $700 and an agreement on the part of Robert T. Croak to pay the taxes that had accrued against the land. With respect to the debts the testimony discloses that they consisted of a number of cash loans covering a period of years from 1931 to 1937.

The interveners contend that an antecedent debt does not constitute such valuable consideration as will support a claim of bona fides on the part of a purchaser. They cite the case of Union Nat. Bank v. Oium, 3 ND 193, 54 NW 1034, 44 Am St Rep 533. The rule in the Oium Case was approved in Hanson v. Blum, 53 ND 526, 207 NW 144. Both of these cases deal with the filing and renewal of chattel mortgages and a requirement with respect thereto contained in the statutes. In the latter case this court said:

"Failure to meet this requirement visits a penalty upon the mortgagees in that it subordinates the mortgage claims to those of such persons as relying upon the apparent unencumbered ownership of the mortgagors, extend credit or change positions to their detriment. Whether the debt is present or antecedent is immaterial so long as there is an extension of credit or a detrimental change of position induced by lack of notice on account of failure to file."

These two cases when taken together are in accord with the majority rule that where the consideration for the conveyance of real estate is the extinguishment of an antecedent debt the transferee dos not become a bona fide purchaser unless he surrenders valuable rights or changes his position to his detriment. See Kelly v. Baird, 64 ND

346, 252 NW 70. This rule is applicable to the transfer of trust property. The exception applies where the innocent purchaser cannot be placed in statu quo, as when the debt has become barred by the statute of limitations. Pomeroy, Equity Jurisprudence, 5th ed § 749A; Am Law Inst. Restatement, Trusts, Vol 2, pp 932–934.

While the record does not show the dates that the respective sums were loaned to Tuskie it is apparent that a major portion of those loans would be subject to the defense of the statute of limitations if recovery was sought thereon. Moreover, Simon Tuskie died in 1943. The record is silent as to what if any estate he left and whether his estate was probated. His will is mentioned in the testimony but no disclosure is made with respect to any proceedings thereon. The debts cannot be revived and given the legal status they occupied when the grantees acquired the quitclaim deed. Status quo cannot be restored.

In addition to antecedent debts the consideration embraced an agreement on the part of Robert T. Croak to pay the taxes on the land. Pursuant to this agreement he immediately paid approximately $54 to the county and entered into an agreement binding himself personally to pay $415.86. He has made payments according to the tenor of this contract.

On p 932, Am. Law Inst. Restatement, Trusts, Vol 2, it is stated that "if the trustee transfers trust property in consideration both of the extinguishment of a pre-existing debt or other obligation and of the payment of money or transfer of other property or the rendition of services, the transfer is for value."

With respect to that part of the consideration consisting of an antecedent debt, Robert T. Croak has undoubtedly altered his position by permitting the statute of limitations to become a bar to the recovery of a major portion of that debt. With respect to his promise to pay the taxes he has actually paid out considerable sums in cash and bound himself personally by contract with the county commissioners to pay the balance. The plaintiff Betty Croak is the wife of Robert T. Croak who was the real purchaser. She was joined as grantee at his request. The record clearly establishes that she had no notice of any claim on the part of the interveners. The transfer of title to the plain-

tiffs contains all of the elements of a bona fide purchase. The plaintiffs are, therefore, entitled to prevail.

When the plaintiffs obtained their deed in September, 1939, land values in North Dakota were at ebb tide. The county commissioners saw fit to compromise the tax lien of the county which amounted to approximately $800 by accepting a cash payment of $54 and entering into a contract for the payment of $415.86 over a ten year period. On the other hand, the agreement by which the interveners would now claim an interest in the land was entered into in 1917. For twenty-six years thereafter the interveners made no move to assert their rights thereunder. They permitted the taxes to accumulate and had it not been for the indulgence of the legislature and the board of county commissioners the county would have obtained title to the land in 1939. While we do not decide this case upon the ground of laches, we mention these facts as an indication of where the equities lie. The decision of the trial court is correct and the judgment appealed from is therefore affirmed.

CHRISTIANSON, Ch. J., and BURR, NUESSLE, and BURKE, JJ., concur.